## Municipality Number Two, for the Opening of Roffignac Street.

The act of 3d of April, 1832, for the opening of streets, etc., in New Orleans, is not unconstitutional in cases where, in proceeding under it, provision is made for payment for the property before the expropriation is effected.

On the Mississippi river, the levee is, by law, considered as the bank; and the use of the batture between the line of that levee and the stream, is in the public. The commissioners appointed under the act of April 3d, 1832, for the opening of streets, etc., in New Orleans, have no right to assess the adjacent property for opening a street on such batture, the use of which was already in the public. But if the levee be advanced by the municipal authority, and the public use extinguished, the batture would become private property, which, if taken for public use, should be paid for, and the commissioners would have the right to make an assessment for that purpose.

In making the assessment under the act of April 3d, 1832, for opening streets, etc., the only lots subject to assessment are those adjacent to, or fronting that part of the street so improved. The owners to whose land a new front is given or added to, are alone subject to contribution for paying for it.

APPEAL from the Third District Court of New Orleans, *Kennedy*, J. *R. Hunt*, for Municipality Number Two. *A. K. Josephs*, for *Shepherd*. *Grivot*, for *McDonough*. *H. H. Strawbridge*, for *Hoffman et al*. *Alexander Walker*, for *Donovan*, appellee. The judgment of the court was pronounced by *Eustis*, C. J. On the 23d of August, 1847, the Second Municipality of New Orleans applied, by petition addressed to the Third District Court of New Orleans, for the widening of Roffignac street, between New Levee and Front streets, under the act of the Legislature, passed on the 3d of April, 1832, entitled an act to regulate the opening, laying and improving streets and public places in New Orleans, etc. After a long litigation, a final judgment was rendered on the 19th of January, 1850, by which an amended report of the commissioners appointed by the court was homologated, the oppositions filed to said report having been dismissed. From this judgment, the Charity Hospital, the heirs of *John Grass*, the Second Municipality, and *R. D. Shepherd*, have appealed.

The land required for the widening of the street, was a lot at the corner of Front street, which projected some forty-seven feet in its whole depth on the ordinary width of Roffignac street, and which, by being brought into the street, extended its upper boundary in a direct line to Front street, thus giving a uniform width to the street to be opened. It belonged to *John Donovan*, and was assessed in the report of the commissioners at six thousand dollars. This lot fronting on the river, the batture in front of it was estimated with it, at the additional sum of six thousand dollars. Both lots are included in the proposed expropriation, and the street extended in its full width to the river; the assessment being of twelve thousand dollars for the property taken, with all its rights and dependencies.

One of the grounds of the oppositions to the report and assessment of the commissioners, in which the municipality itself has united, is that which puts in issue the title of *Donovan* to the lot. It is contended, that the lot is public property, and dedicated to public use, and, consequently, no legal assessment can be made on the parties to indemnify *Donovan* for its application to public pur-

poses. This question, as to *Donovan's* title, has been very fully presented by his counsel, and by the counsel for the appellants, in written arguments. A careful consideration of the evidence has put beyond doubt, in our minds, the correctness of the decision of the district judge upon it; that the property has not been dedicated to the public use; and that, so far as the appellants are concerned, it belongs to *Donovan*, and, if taken by the municipality, must be paid for, at its value.                                                                                  -

MUNICIPALITY No. Two, for Opening Rof- fignac St.

Besides the written arguments of the counsel of *Donovan* and the Charity Hospital, we have also before us those of the heirs of *Grass* and of *M. W. Hoffman*, one of the appellees. They present various questions involving the legality of the mode and the amount of the assessment, and the constitutionality of the statute itself, under which the present proceedings have been instituted and conducted.

The delegation of the sovereign power of eminent domain, of appropriating private property to public use, to municipal corporations, is not unusual in the legislation of the several States. Its exercise has given ground for serious complaint, and the power in the hands of unscrupulous or heedless men may be made an engine of great injustice and oppression. The constitutionality of the laws providing for the expropriation of private property, for the purpose of establishing streets and other public places, and of forcing the proprietors of estates in the neighborhood, who are presumed to be benefited by the change, to pay for the land thus taken for public places, by subjecting their land to a contribution in the form of rateable assessment, has been more than once questioned. The subject has been recently very thoroughly examined by the Court of Appeals, of New York, in the case of *The People on the relation of Griffin and others* v. *The Mayor of Brooklyn*. A very able opinion was delivered by Judge Ruggles, in favor of the constitutionality of laws of this class, in which the history of the jurisprudence relating to them is given. In the general views expressed in that opinion, we concur. In cases where the payment is made before the proprietor is expropriated from his land, (as provided in the opinion just delivered in the case of *Euphrosine street*,) there is no constitutional objection to the carrying into effect the statute under which these proceedings have been instituted.

By the original act of the incorporation of New Orleans, the mayor and city council had ample powers for the opening and widening of streets. A very simple mode of adjusting the indemnity due to the proprietors of the land required was provided, and the amount determined to be due was to be paid for out of the general funds of the city. Act of 1805, § 16 and 17.

The provisions of that act were found equal to every exigency, until the year 1832, when the process of expropriation was to be quickened, and a statute was enacted, under which the burden of paying for property required for new streets was to be laid upon those who were supposed to derive the benefit from the improvement. Under this statute, the legality of the assessments made upon the lots of the appellants must be determined; the statute is the mandate by virtue of which the power of expropriation and taxation is to be exercised. We consider, that the powers conferred by the statute are not to be enlarged by intendment: they affect the property of individuals, by subjecting the land required for public use to be taken against the will of the owner, and the proprietors of lots fronting or adjacent, to the expense and charge of paying for it. The case, and the proceedings under it, must be within the statute. We find, by the allegations of the petition of the municipality, that nothing else is

MUNICIPALITY asked than the widening of Roffignac street, between New Levee and Front
No. Two, FOR
OPENING ROF- street, so that it be of uniform width. The petition follows the words of the
FIGNAC ST. ordinance of the municipal council of the 15th of July, 1847, by virtue of
which the proceedings are instituted. We have seen, that the municipality
itself contests the title of *Donovan*; and we consider, that the right of use of
the lots included in the report of the commissioners, as well as the right of pro-
perty and the legality of the assessments for distribution, are fully at issue by
the pleadings before us.

In the estimate of *Donovan's* property at $12,000, is included the batture lot
in front, which, with its riparian rights, is estimated at six thousand dollars by
the first report of the commissioners. It, therefore, becomes necessary to con-
sider the right of the commissioners to impose this assessment for the purpose
of appropriating this batture lot to the public use.

On the Mississippi river, the levee along its banks, when established by muni-
cipal authority, is by law considered as the bank of the river. The use of the
banks of navigable rivers is public. The use of this batture lot between the line
of the levee and the stream is in the public, the property in the soil being in the
adjacent proprietor. If, by the municipal authority, the levee should be
advanced towards the river, and the batture brought within the dominion of pri-
vate property by the extinguishment of the public use, and its subjection as to pos-
session and use, to the will of the owner, and the space now under consideration
should be required for a street, undoubtedly the municipality would have to cause
the owner to be indemnified for the property. But, until this occurs, the use of
the batture is in the public. There is nothing before us which shows, with any-
thing approaching certainty, that the levee will be advanced within any reason-
able time; the whole extent of the lot is only from sixty-eight to seventy-four
feet from the levee to the water. It may never be increased to an extent which
would justify, as a matter of good police, the removal of the levee, and may be
diminished by any sudden abrasion caused by the currents of the river. If, in
the judgment of those entrusted with the administration of the municipality,
the public interest requires that the municipality should own this piece of bat-
ture, let the municipality buy it, and pay for it. *Henderson et al.* v. *The Mayor
et al.*, 5 L. R. 423. At present, there has been no ordinance from the muni-
cipality, which indicates any such necessity or purpose. That under which the
proceedings are had, contains nothing to that effect. The question then presents
itself, whether the assessments made on the property of the several proprietors
who are appellants, and the contribution which the municipality is required to
make, are authorized by the statute, for the purpose of widening Roffignac
street to the river. The question, we think, answers itself. The use of the
space is already in the public, and there can be no assessment for opening a
space which is already open, or extending a street over a batture, the use of the
whole of which is public, and the right of passage over which is a consequence
of the use. We therefore conclude, that the assessments made and the con-
tribution required for the purpose of reimbursing the owner of the batture lot,
are not authorized by the statute. The estimated value of the batture lot, to
wit, six thousand dollars, must therefore be left entirely out of any sum which
the appellants might be compelled to make up.

It is contended, by the counsel for the Charity Hospital, one of the parties
appellant, that the only lots subject to assessment under the statute, are those
"adjacent to and fronting that part of the street so opened, straightened or

improved;" that from the words of the act, as well as from its general tenor, the owner to whose land a new front is given or added to by the new street, are alone subject to the contribution for paying for it.

We think, the word *adjacent* applied to lots, is synonymous with the word *contiguous*. C. C. 683. In another and more general relation, it might have a more extended meaning; but in the sense in which it is used, to wit, to discriminate as to locality from other lots, we can only give this meaning to it in a statute like this, which undertakes to divest a right of property, and is consequently subjected to strict rules of interpretation.

The act does not provide, that all the property to be benefited by the improvement shall contribute to pay for it; it commits no such power of discriminating between the lots deriving a benefit and those which derive none. It does not give to the discretion of the commissioners, the whole range of the neighborhood, in selecting property to be assessed. It evidently limits the contribution to lots having a certain location, undoubtedly, for the purpose of preventing too great an exercise of a discretionary power on the part of the commissioners; and that location is, by the statute, confined to the lots and premises adjacent to and fronting that part of the street so opened, straightened or improved. Within that location, the judgment of the commissioners is to be exercised in fixing the contribution of each lot. The advantage and benefit upon which the commissioners are to act, ought not to be speculative and distant, depending on remote and uncertain contingencies, but should be substantial, certain, and to be realized within a reasonable and convenient time. 3 Wendell, 453, *Matter of Fourth Avenue*.

The statute requiring the contribution to be confined to the lots or premises adjacent to the improvement, and the terms made use of being plain, and presenting no question of verbal criticism, we can hold no property subject to assessment, which is at a greater distance from the space taken for the public use than the front line of a lot of sixty-five feet, about the size of lots in which the city was originally laid out. The adjacent lots within this distance and the lots opposite, to the same extent, will be the only lots subject to contribution, according to the only proper construction, which, we think, the statute will bear. This mode confines the assessment to the lots in the same square or islet; whether it is to be extended to another square, it is not necessary to determine; a case might occur in which it might be so extended. We are of opinion, that the only lots which would be bound to contribute for the lot between Front street and New Levee, are those fronting and adjacent to that part of the street to be opened, to wit, the lot of *Grass*, and sixty-five feet of land adjacent to *Donovan's* lot, on Roffignac street, and the lots to the same extent of front on the opposite side of the street. The statute gives no warrant for burthening any other property in the neighborhood with this expense. We have fixed upon this distance of sixty-five feet, because that dimension is the largest front of what may be denominated a full lot in New Orleans, and is as just a standard as we can think of.

The litigation in relation to the opening of this street, according to our reports, dates back as far as 1838. 12 L. R. 305. The present proceedings were instituted in 1847. On the 24th of March, 1849, *Donovan* made an abandonment of his lot, with the batture, at the appraised value of twelve thousand dollars. This abandonment appears to have been made by a formal instrument filed with the proceedings. It was not accepted by the municipality, and the district judge determined that it was filed too late to take effect under the statute. It is clear,

MUNICIPALITY
No. Two, for
Opening Rof-
fignac St.

that the abandonment was not made within the time required by the fifth section of the statute; and we find no provision made for an abandonment of the property by the owner, unless it be considered authorized under that section, or the preceding section, which presupposes the consent of the municipality to be given. We regret, that it is not in our power to afford relief to *Donovan*, by enforcing the abandonment of his property, and the payment to him of its estimated value. During this litigation, the enjoyment of his rights to his property had been suspended by the proceedings instituted by the municipality, which have resulted in nothing but injury to him, and without any fault of his. His case constitutes a strong claim upon the justice of the corporation, which, we hope, will not be overlooked, or longer deferred.

The judgment of the district court is therefore reversed, except that part of said judgment which decrees the lot on Front street to belong to *Donovan*, and that said lot is not dedicated to public use, which is affirmed. The case is remanded for further proceedings, according to the rules settled in this opinion; the municipality paying costs in both courts.

SLIDELL, J. My views upon a portion of the subject considered in this case, are stated in the case of the *Opening of Euphrosine Street*, to which I refer.