## IN RE CANAL AND CHARLES STREETS.

A statute provided that every resolution or vote . . . . should be presented to the Mayor who was to sign it if he approved it but if not to return it with his objections to the board in which it originated. . . . "If any bill should not

be returned by the Mayor before the end of the meeting holden next after the lapse of ten days subsequent to the presentation of the bill to him the same shall be a law in like manner as if he had signed it."

Another statute provided that in case of certain highway improvements involving the exercise of eminent domain the city council should within sixty days from the filing of certain reports elect whether it would make the improvement or not.

Within the sixty days the city council voted to make the improvement. Its resolution was presented to the Mayor who allowed the sixty days to expire without action on his part, and the expiration of the sixty days preceded the first meeting of the board in which the resolution originated holden after the lapse of ten days subsequent to the presentation of the resolution to the Mayor.

*Held,* that the resolution never took effect, and that there was no election by the city council within the sixty days.

STATUTORY PROCEEDINGS to lay out highways.   On motion to dismiss the proceedings.

*January* 7, 1893.   MATTESON, C. J.   This is a proceeding under an act entitled, ":An Act in relation to Laying out, Enlarging, Straightening, or otherwise Altering Streets in the City of Providence, passed February 22, 1854, and the several Acts in amendment thereof, or in addition thereto."

Counsel for several parties interested have entered their appearance and moved to dismiss the proceeding, alleging that it can go no farther, because of the failure of the city council of Providence to elect to make the improvement described in the report of the commissioners of estimate and assessment, heretofore appointed by this court, within sixty days after they had made their report.

Pub. Stat. R. I. cap. 991, § 1, of April 26, 1872, is as follows :   "The City Council of the City of Providence shall, within sixty days after the Commissioners of Estimate and Assessment shall have made their first report to the Supreme Court, as provided in the act to which this is in amendment, elect whether they will make the improvement described in said report or not."

The commissioners made their report to the court, September 12, 1892.

November 3, 1892, the board of aldermen passed the following resolution :

" Whereas, the Commissioners of Estimate and Assessment

appointed by the Supreme Court at the October term, 1890, upon the layout, extension and widening of Canal street, from Smith street to Mill street and Charles street from Mill street to Randall square under and pursuant to an act entitled 'An act in relation to the laying out, enlarging, straightning, or otherwise altering streets in the city of Providence, and the acts in amendment thereof and in addition thereto,' made their first report to said court, on September 12, 1892 : Now, therefore, within sixty days after the making of said report to said court,

*Resolved*, That the City Council do hereby elect to make said improvement."

November 7, 1892, the common council concurred in the passage of this resolution.

November 9, 1892, the resolution was presented to the mayor, who, without having taken any action on it, returned it November 23, 1892, to the city clerk.

The sixty days after the commissioners had made their report expired November 11, 1892.

Section II of the charter of the City of Providence, Pub. Laws R. I. cap. 598, of March 8, 1866, entitled "an act to revise, consolidate and amend an act entitled, 'An act to incorporate the city of Providence and the several acts in addition thereto and in amendment thereof,'" is as follows :

"Clause 1. The administration of all the fiscal, prudential and municipal affairs of said city, with the conduct and government thereof, shall be vested in one principal officer to be styled the mayor; one council of eight persons to be styled the aldermen; and one council of thirty-two persons to be styled the common council; together with such other magistrates or officers as are hereinafter specified, or by the laws of this State or the ordinances of the said city are, or hereafter may be, authorized or prescribed.

Clause 2. The mayor, aldermen, and common council, in their joint capacity, shall be styled the city council."

Section VII of said charter, clause 7, as amended by Pub. Laws R. I. cap. 744, § 2, of March 10, 1879, is as follows :

"Every ordinance, resolution or vote to which the concur-

rence of the Common Council and the Board of Aldermen may be necessary (except on a question of adjournment) shall be presented to the Mayor. If he approve, he shall sign it; but if not he shall return it to the Board in which it originated, with his objections; and if it shall then pass such board by a vote of three-fifths of all the persons elected thereto, it shall be sent, together with such objections, to the other board; and if approved by a similar majority of that board, it shall become a law. If any bill shall not be returned by the Mayor before the end of the meeting holden next after a lapse of ten days subsequent to the presentation of the bill to him, the same shall be a law in like manner as if he had signed it."

In support of the motion, it is contended that as the proceeding involves the taking, *in invitum*, of private lands for public use, the statutory requirements must be strictly observed; and, hence, as the resolution was not approved by the mayor on or before November 11, 1892, the last of the sixty days next succeeding the filing by the commissioners of their report and the last day on which an election could be made by the city council under the statute, the election was not complete within the sixty days; that it did not become complete by the non-action of the mayor until the end of the meeting of the board of aldermen holden next after the lapse of ten days subsequent to the presentation of the resolution to the mayor; and, therefore, as the election did not become complete until after the sixty days, it was not a compliance with the requirement of the statute that the city council shall elect whether or not to make the improvement described in the report within sixty days.

In reply, it is suggested, that the mayor's *quasi* approval of the resolution by his non-action may be regarded as relating back to the time of the concurrence in the resolution by the common council, or at least as dating from November 9, 1892, when the resolution was presented to him; that his failure to act on that day may be treated as a constructive assent on that as on each succeeding day, and in this connection attention is called to the language of the last clause of

Pub. Laws R. I. cap. 744, § 2, that the same shall "*be*," not "*become*," as in some other similar provisions in other states, a law, &c.

The difficulty with this suggestion is that so long as the mayor retains the resolution within the period limited for his action, he is at liberty to approve or disapprove it, and until the time within which he can act has expired, no one can know that he may not disapprove it, and, hence, his *quasi* approval to be inferred from his non-action does not, and cannot become complete until the lapse of the period limited. *McNeil* v. *Commonwealth*, 12 Bush, 727 ; Sutherland on Statutory Construction, § 104.

It is further suggested in reply that even if it be held that the city council did not complete its election till after November 11, 1892, such failure should not be held fatal ; that the beginning to act within the sixty days was sufficient ; that the act of election was at all events completed within a few days subsequent, and no hardship on any individual appears to have been caused by the delay ; that the delay affects no other act or time fixed under the progressive provisions of the law ; no consequences follow it affecting adversely the remedies or rights of individuals, and, therefore, this part of the statute should be construed to be directory and not mandatory ; that it should be regarded as merely defining a reasonable time for the city council to elect whether or not to make the improvement, and that it is enough that the city council has acted within a reasonable time so that there has been no change of circumstances which would affect adversely the interests or rights of parties ; and further than this is a proceeding, *pro bono publico*, and that for this reason, too, a liberal construction is warranted ; and that where the language of a statute is affirmative instead of negative, it does not necessarily imply that the mode or time mentioned in it is exclusive and that the act provided for, if done at a different time, or in a different mode, will not have effect.

There would be force in these considerations, were this proceeding not in derogation of private rights, but being such, the well settled rules of construction require that the dele-

gated powers conferred by statute shall be strictly pursued and that they shall not be extended by intendment. *Howland* v. *School District*, 15 R. I. 184, 187 ; *Gilmer* v. *Lime Point*, 19 Cal. 47 ; *Municipality No. 2 for the opening of Roffignac St.*, 7 La. Ann. 76 ; *Gilbert* v. *Columbia Turnpike Co.*, 3 Johns. Cas. 107, 108, and note.

It is further suggested in reply to the contention in support of the motion that the term "city council," as used in the statute requiring an election, does not include the mayor, and, therefore, it is immaterial whether the resolution was approved by him or not, so long as it was passed by the board of aldermen and the common council. Reference is made to Pub. Laws R. I. cap. 699, § 2, of May 30, 1867, which provides that the electors of the city of Providence, qualified to vote for general officers, shall give in their votes, in their respective wards, for mayor, &c., and also to the proviso contained in the second paragraph of the second section of Article 11 of the Constitution of the State, that no person shall at any time be allowed to vote in the election of the city council of the city of Providence . . . . . unless he shall, within the year next preceding, have paid a tax assessed on his property therein, valued, at least, at one hundred thirty-four dollars. It is argued that the General Assembly could · not, in view of the provision of the statute and the proviso in the Constitution referred to, have understood when they passed said cap. 699, that the mayor was a part of the city council, since if so regarded, the statute would be unconstitutional. It is further urged that originally the mayor had no vote, he and the board of aldermen constituting one body, of which he was the presiding officer ; Section IV of the charter, clause 1. That afterwards the charter was amended so as to give him a casting vote. Pub. Laws R. I. cap. 599, of March 13, 1866. Reference is also made to Section VII of the charter, as amended by Pub. Laws R. I. cap. 744, § 2, hereinbefore quoted, being the provision requiring that every ordinance, resolution or vote to which the concurrence of the common council and board of aldermen may be necessary (except on a question of adjournment) shall be presented to ·

the mayor, &c. It is contended that none of these provisions make the mayor a member of the city council, within the meaning of the statute, and that when the common council and the board of aldermen, the mayor composing a part of the latter body as its presiding officer, have both voted within the prescribed time to make the improvement, such vote is conclusive, and is the election intended by the general assembly.

The argument is ingenious but cannot be sustained. If we concede that the mayor is not a part of the city council, the charter, nevertheless, requires that every ordinance, resolution or vote, to which the concurrence of the common council and board of aldermen is necessary (except on a question of adjournment) shall be presented to the mayor, and it cannot become operative unless he shall approve it; or, if he shall not approve it and shall have returned it to the board in which it originated with his objections, unless it shall then pass both boards by a vote of three-fifths of all the persons elected thereto; or, if not so returned before the end of the meeting, holden next after the lapse of ten days subsequent to its presentation to him, until the lapse of the time so limited. The resolution of election was a resolution which required the concurrence of the common council and board of aldermen to its passage, and, therefore, one which by the terms of the charter was required to be presented to the mayor. It could only become operative by the action or non-action of the mayor, in accordance with the provisions of the charter, which we have mentioned.

On examination we find that the original provision of the charter, which with modifications is reënacted in section VII, clause 7, of the present charter, was passed at the January session, 1854, of the General Assembly, the same session in which the statute under consideration was passed, so that it is not unreasonable to infer that the General Assembly contemplated, when it enacted the provision of the charter, that a resolution of the city council making the election required by the statute should be presented to the mayor.

We are of the opinion that the motion to dismiss should be granted.

*Arnold Green, James Tillinghast, Samuel Ames & Henry Marsh, Jun.*, for the motion.

*Francis Colwell*, City Solicitor of the city of Providence, & *Benjamin N. Lapham, contra.*