THE PEOPLE *ex rel.* School Directors

*v.*

GEORGE ALLEN *et al.*

*Filed at Springfield April 2, 1895.*

1. SCHOOLS—*petition to form a new district—what is.* A petition to organize a school district, including all the lands of two old districts and parts of the lands of yet two others, is properly treated as a petition to organize a *new district,* and not as one to consolidate districts, or to detach territory from one district and add it to an adjacent district.

2. SAME—*petition of two-thirds of voters gives jurisdiction.* It is sufficient to give the school trustees jurisdiction to act on such a petition, if it is signed by two-thirds of the legal voters residing in the territory proposed to be organized into such new district, without regard to their particular location within that territory or their relation as residents to the former districts. (MAGRUDER, J., dissenting.)

APPEAL from the Circuit Court of Champaign county; the Hon. FRANCIS M. WRIGHT, Judge, presiding.

L. A. SMYRES, State's Attorney, and J. L. RAY, for appellants.

GERE & PHILBRICK, and JOHN D. BENEDICT, for appellees.

Mr. CHIEF JUSTICE WILKIN delivered the opinion of the court:

This is a proceeding in the nature of a *quo warranto,* questioning the right of each of the defendants to hold the office of school director. The amended information, upon which the hearing below was had, is by the State's attorney of Champaign county, on the relation of certain alleged school directors of districts numbered 4, 7 and 8, in the counties of Champaign and Vermilion. It avers that prior to the first day of April, 1893, relators had been lawfully elected, and were then severally exercising the duties of boards of directors in said districts, No. 4

including all of sections 27, 28, 33 and 34, township 17, range 14, west; No. 7, the north half of the north half of section 16, in the same town and range, and other lands; No. 8, the south half of the north-west quarter, the south-west quarter of the north-east quarter, and the south-west quarter and the east half of the south-east quarter of section 16, and the north-west quarter of the north-west quarter of the north-east quarter of section 21, same town and range, and other lands. It further sets up that another district, numbered 5, then existed, which included all of sections 22 and 15, and parts of sections 16 and 21, in the same town and range, with school directors rightfully exercising the duties of their office. It then proceeds as follows: "And the said people, upon the relation aforesaid, here give the court to understand and be informed that at the April meeting of the trustees of said town 17, north, range 14, west of the second principal meridian, a petition was presented to the said trustees to organize a new school district, including all the lands of the former district No. 5; also, all the lands included in district No. 4; also, a part of the lands included in district No. 7, which said part of district No. 7 so taken was about 160 acres; and also took in about 560 acres of the lands belonging to district No. 8. * * * And the said trustees granted the prayer of said petition, and ordered a new school district organized, * * * and declared the same organized into a new district, called district No. 5;" that thereafter the directors of districts 4, 7 and 8 appealed from that order to the superintendent of schools of Champaign county, who called to sit with him, in the consideration thereof, the superintendent of schools of Vermilion county; that the two, having heard the appeal, confirmed the order of the trustees; "that the defendants were afterwards elected school directors of said so-called new district No. 5, and have been acting as such," etc. It is then alleged that district No. 5 was not legally organized, in that the peti-

tion for the same was "not signed by a majority of the legal voters of either district No. 7, or district No. 8, or district No. 4; and further, that said petition was not signed by two-thirds of the legal voters living within certain territory described in the petition, detached from either of said districts No. 7 or No. 8; neither was said petition signed by two-thirds of the legal voters residing in district No. 4; and further, that said petition was not signed by two-thirds of the legal voters living within certain territory containing not less than ten families, detached from either of said district No. 7 or No. 8, neither was it signed by two-thirds of the legal voters living within the territory of district No. 4, which was attached to or consolidated with said district No. 5;" that said petition was in fact signed by two-thirds of the legal voters living within all of the territory included in said proposed new district,—that is to say, said petition was in fact signed by two-thirds of the legal voters residing upon sections 15, 16, 21, 27, 28, 33 and 34, but a very large majority of said signers resided in the old district No. 5, and was also signed by about one-half of the legal voters residing in said former district. No. 4, and was also signed by one of the legal voters residing in the territory detached from district No. 8, and that said petition was not signed by any legal voter residing in district No. 7; "and that by virtue of the fact that said signers of said petition were two-thirds in number of all the legal voters residing in the territory proposed to be organized into said new district called No. 5, the said trustees sustained said petition, and organized said new district No. 5 without any regard to where the said petitioners were located,—whether in district No. 4, No. 5, No. 7 or No. 8."

To this information a general demurrer was filed, but overruled, and leave given the defendants to plead. Thereupon they filed a plea, alleging that Vermilion and Champaign counties are both organized under the Township Organization law of this State, and that a part of

township 17, north, range 14, west, lies within each of
said counties; that at least twenty days before the reg-
ular meeting in April, 1893, of the board of trustees of
schools in said township, there was duly filed with the
clerk of the board "a certain petition for the formation
or organization of a new school district out of territory
belonging to two or more districts in said township," set-
ting out the petition, and also setting up in detail the
granting of the prayer of the petition by the board of
trustees, appeal to the superintendents of schools, and
their final order, as alleged in the information.   To this
plea relators filed a demurrer, which was overruled, and
judgment entered against relators for the cost of suit.
From that judgment this appeal is prosecuted.

Whether, for the purposes of this case, the averments
of the plea be taken as true on the demurrer to it, or that
demurrer is carried back to the information, the only
question presented for our decision is, whether the peti-
tion upon which the new district No. 5 was organized
was signed by the requisite persons, as to locality and
numbers.

Section 46, article 3, of the School law of this State,
in force May 21, 1889, (3 Starr & Curtis, 1158,) under which
the district was formed, provides that the trustees of
schools in newly organized townships shall lay off the
same into school districts, etc.   Section 47 says : "In a
township where such division into districts has been
made, the said trustees may, in their discretion, at the
regular meeting in April, when petitioned as hereinafter
provided for, change such districts as lie wholly within
their townships so as, first, to divide or consolidate dis-
tricts; second, to organize a new district out of territory
belonging to two or more districts; third, to detach ter-
ritory from one district and add the same to another dis-
trict adjacent thereto."   Section 48 provides: "No change
shall be made, as provided for in the preceding section,
unless petitioned for, first, by a majority of the legal

voters of each of the districts affected by the proposed change; second, by two-thirds of the legal voters living within certain territory described in the petition, asking that the said territory be detached from one district and added to another; third, by two-thirds of all the legal voters living within certain territory containing not less than ten (10) families, asking that said territory may be made a new district."

Appellants contend that the petition upon which district No. 5 was organized must have been signed by a majority of the legal voters of each of the old districts numbered 4, 7 and 8; also, by two-thirds of the legal voters living within the territory taken from districts 7 and 8, and two-thirds of the legal voters residing in district No. 4, and two-thirds of the legal voters living within certain territory containing not less than ten families, detached from districts 7 and 8. On the other hand, appellees insist that the trustees and superintendents of schools to whom the matter was appealed, decided correctly in holding that it was only necessary that the petition should be signed by two-thirds of all the legal voters residing in the territory proposed to be organized into said new district. That it was so signed is shown by the information.

The merits of this controversy must depend upon whether the petition was "to divide or consolidate districts," or "to detach territory from one district and add the same to another district adjacent thereto," as authorized by the first and third clauses of section 47, *supra*, or "to organize a new district out of territory belonging to two or more districts," under the power conferred by the second clause of that section. If the latter, the case of *Parr* v. *Miller*, 146 Ill. 596, is decisive of the correctness of the position of appellees. The petition in question in that case was for the formation of a new district out of territory belonging to two or more districts, and it was signed as required by the third clause of sec-

tion 48.   There, as here, it was contended by counsel for appellants that it should have been signed as required by all three of the clauses of that section; but we held otherwise, and said : "The second clause of section 47 confers the power upon the trustees to organize a new district out of territory belonging to two or more districts, and, in our opinion, when a petition is presented, signed by two-thirds of the legal voters living within a certain territory containing not less than ten families, asking that said territory may be made a new district, as specified in clause 3 of section 48, then the trustees are clothed with authority to act.   The first and second clauses of section 48 have nothing to do with the organization of a new district.   They do not relate to that subject.   The first relates to an application to divide or consolidate districts.   The second, as is apparent from its language, relates to an application addressed to the trustees to detach territory from one district and add the same to another adjacent thereto."   The reasons for that construction, and the impracticability of giving effect to the statute under that contended for by appellants, is there pointed out, and need not be repeated here.

But counsel for appellants say this case is distinguishable from the *Parr case*, because the information shows plainly that the petition was to consolidate districts, and at the same time detach territory from one district and add it to another.   We do not so understand the information.   On the contrary, it says : "A petition was presented to the said trustees to organize a new school district, including all the lands of the former district No. 5; also, all the lands included in district No. 4; also, part of the lands included in district No. 7, which said part of district No. 7 so taken was about 160 acres; and also took in about 560 acres of the lands belonging to district No. 8."   We are at a loss to perceive how it could have been more clearly and specifically stated that the

petition was to organize a new district out of territory belonging to two or more districts, than is here done. The plea avers that the petition was "for the formation or organization of a new school district out of territory belonging to two or more districts in said township," and the petition itself shows that it was to form "a new district" out of territory therein described. On the face of the petition, then, as shown both by the information and plea, the trustees were asked to act under the power conferred upon them by the second clause of said section 47, and not under either of the other clauses.

But it is said the action of the trustees was under the first and second clauses, because the organization of the new district did, in fact, "consolidate two districts, 4 and 5," and "detach territory from not only one district, but from two, 7 and 8, and attach it to 5," and "to evade the provisions of the statute the parties called it the organization of a new district, and pretended to act under the third clause of section 48." The position, as we understand it, is, that although a petition may, both in form and substance, be a petition "to organize a new district out of territory belonging to two or more districts," and conform in every respect to the requirements of section 48 by being signed by two-thirds of all the legal voters living within the territory described in it, still, if it appears that the effect of granting the prayer of it will be to include the whole, or any part, of the territory of two or more existing districts in the new one, the petition should be treated as one "to divide or consolidate districts," or "to detach territory from one district and add the same to another district adjacent thereto." To so hold would render nugatory the second clause of section 47. A new district cannot be formed out of territory belonging to others without taking all or some part of such territory. Certainly, a petition for one purpose can not be made to serve another, by merely calling it a peti-

tion for the other purpose, but when it is, in fact, a petition to organize a new district, and properly signed as such, the trustees have no right to say it should be signed as though for a different purpose. They may, in their discretion, refuse to grant the prayer of it, but they can not refuse to entertain it because it is not properly signed. If, as contended, the petitioners sought to evade the statute, the remedy was before the trustees or superintendents, on appeal.

Nor can the fact that a majority of the signers of the petition were residents of the old district No. 5, or that none of them resided in one of the districts from which territory was taken for the new district, avail the relators here. The question with which we have to deal is, was the petition presented to the trustees signed by a sufficient number of the persons required by the statute to give them jurisdiction to act. The wisdom of their action cannot be reviewed in this proceeding.

The contention that, under the construction of the statute, thickly populated portions of a township, as one school district, may unjustly deprive others of their territory without their consent, goes back to the case of *Parr* v. *Miller*. Presumably the trustees, in the exercise of the discretionary power vested in them by section 47, *supra*, will see that such abuses are not practiced. Moreover, the construction contended for by appellants might work equal injustice, because, as said in *Parr* v. *Miller*, *supra*, "if a new district could not be organized unless the petitioners, in their application to the trustees, conformed to the requirements contained in the first, second and third clauses of section 48, it would be almost impossible in any case, however great the necessity might be, to obtain the formation of a new district."

The judgment of the circuit court is in our opinion correct, and it will be affirmed.

*Judgment affirmed.*

Mr. JUSTICE MAGRUDER, dissenting:

This is a *quo warranto* proceeding to inquire into the validity of the organization of a new school district. The relators are the directors of school districts Nos. 7, 8 and 4 in Township 17, etc., lying partly in Champaign County and partly in Vermilion County. Adjoining these districts was school district No. 5. The information avers that, at the April meeting, 1893, a petition was presented to the trustees of the town, praying for the organization of a new district to include all the lands of districts 5 and 4 and parts of districts 7 and 8; that the trustees organized a new district, calling it new district No. 5, by consolidating said former district No. 5 with district No. 4, and taking 160 acres out of district No. 7, and 560 acres out of district No. 8; that, upon appeal by the directors of districts 4, 7 and 8, the county superintendents of schools in said counties sustained the trustees; that respondents were elected directors of the new school district No. 5, and are acting as such; that said petition was not signed by a majority of the legal voters of either district No. 7, 8 or 4, nor by two thirds of the legal voters living within certain territory described in the petition detached from either of said districts 7 or 8, nor by two thirds of the legal voters residing in district No. 4; that it was signed by two thirds of the legal voters living within all of the territory included in said proposed new district, but that a large majority of said signers resided in said old district No. 5; and that it was also signed by about one half of the voters residing in district No. 4, and was signed by only one legal voter residing in district No. 8, and was not signed by any legal voter in district No. 7; that, upon a petition thus signed without any reference to what district the signers were located in, the trustees organized said new district.

The defendants filed a plea to the information, setting up the location of the township in the two counties, the

filing of the petition and its contents, the appeal, the affirmance of the action of the trustees, the organization of the new district, the election of the defendants as directors. This plea was demurred to by the relators, the demurrer was overruled, exception was taken; and, relators having elected to stand by their demurrer, judgment was rendered for the defendants, and against relators for costs, from which judgment the present appeal is prosecuted.

The proceeding for the organization of the new district was under the School law of May 21, 1889. (Laws of 1889, page 278.) Section 46 of article 3 of that Act provides, that trustees of schools in newly organized townships shall lay off the township into one or more school districts, to meet the wishes or convenience of a majority of the inhabitants of the township, and shall prepare maps of the township, in which the districts shall be designated, etc. Section 47 provides: "In a township where such division into districts has been made, the said trustees may, in their discretion, at the regular meeting in April, when petitioned as hereafter provided for, change such districts as lie wholly within their townships, so as, first, to divide or consolidate districts; second, to organize a new district out of territory belonging to two or more districts; third, to detach territory from one district and add the same to another district adjacent thereto." Sec. 48: "No change shall be made, as provided for in the preceding section, unless petitioned for, first, by a majority of the legal voters of each of the districts affected by the proposed change; second, by two-thirds of the legal voters living within certain territory described in the petition, asking that the said territory be detached from one district and added to another; third, by two-thirds of all the legal voters living within certain territory, containing not less than ten (10) families, asking that said territory may be made a new district."

In the recent case of *Parr* v. *Miller*, 146 Ill. 596, we said in regard to this statute : "The first and second clauses of section 48 have nothing to do with the organization of a new district. They do not relate to that subject. The first relates to an application to divide or consolidate districts. The second, as is apparent from its language, relates to an application addressed to the trustees to detach territory from one district, and add the same to another adjacent thereto." In *Parr* v. *Miller*, *supra*, the purpose of the petition was to obtain the organization of a new district by the trustees out of territory belonging to two or more districts, and it was held that the petition properly conformed to the requirements of the third clause of section 48.

It is evident, that the second clause of section 47 refers to a new district organized by the union of a part of the territory of one district with a part of the territory of another district, or with a part of the territory of more than one other district. It cannot refer to a new district formed by the consolidation of two districts, because, then, there would be no difference in meaning between the first and second clauses of section 47. Nor can it refer to a new district formed by detaching territory from one district and adding the same to another district adjacent thereto, as, in such case, there would be no difference in meaning between the second and third clauses of section 47.

When two districts are consolidated as provided for in the first clause of section 47, the petition for the consolidation must be signed by a majority of the legal voters of each of the districts so consolidated. Here, an attempt was made to consolidate district No. 4 with district No. 5, but such consolidation could not be legally accomplished, unless it was petitioned for by a majority of the legal voters in district No. 4, and also by a majority of the legal voters in district No. 5. It appears from the face of the pleadings, and is not denied, that

the petition was not signed by a majority of the legal voters in district No. 4.

When territory is detached from one district and added to another district adjacent thereto, as provided for in the third clause of section 47, the petition must be signed by two-thirds of the legal voters living in the territory mentioned in the second clause of section 48. Here, an attempt was made to detach 160 acres from district No. 7 and add it to district No. 5, and also to detach 560 acres from district No. 8 and add it to district No. 5, but the petition was not signed by two thirds of the legal voters living "within certain territory described in the petition asking that the said territory be detached from one district and added to another."

The petition for the organization of the new district No. 5 was only signed by two thirds of the legal voters living in all the territory of which the new district was to be composed, that is to say, the whole of district No. 4, the whole of the old district No. 5, 160 acres of district No. 7, and 560 acres of district No. 8. I do not think that this was sufficient under the statute. Two thirds of all the legal voters in the proposed new district might happen to live in the old district No. 5. If this were so, then, according to the theory upon which the new district was organized, the old district No. 5 could, by the action of its own legal voters, attach to itself the whole of district No. 4, and the parts of districts 7 and 8 above designated, against the will of the legal voters in districts 4, 7 and 8. Such a result could not have been intended by the Act.

For the reasons here stated, I am of the opinion that the demurrer to the plea should have been sustained, and that the judgment of the Circuit Court should be reversed and the cause remanded to that court with directions to sustain the demurrer to the plea, and render judgment of *ouster* in accordance with the prayer of the information.