THE PEOPLE *ex rel.* M. P. Butler,

*v.*

JOHN W. SIMPSON *et al.*

*Opinion filed November 1, 1897.*

SCHOOLS—*petition to form union school district—who is a legal voter.* Under section 47 and clause 3 of section 48, article 3, of the act on schools, (Laws of 1889, p. 278,) providing for the making of union school districts from parts of old districts upon petition of two-thirds of the legal voters residing in the territory of the proposed district, a voter moving into such territory at any time before the petition is signed, from another part of the same township, school district and voting precinct, is a legal voter, and must be counted in estimating the proportion of legal voters signing the petition.

APPEAL from the Circuit Court of Montgomery county; the Hon. ROBERT B. SHIRLEY, Judge, presiding.

This is a proceeding by *quo warranto* for the purpose of inquiring into the legal existence of a union school district, alleged to have been formed out of parts of four school districts theretofore existing; and for the purpose of ascertaining and determining, whether or not the new school district was legally formed and organized. The petition for leave to file an information in the nature of a *quo warranto* against the appellees, who assumed to be school directors of the new district, charges that the new school district was not legally formed and authorized, for the reason that two-thirds of the legal voters, residing within the territory of said new union school district, did not petition for the formation of said new school district. Leave having been granted to file the information, such information pursues in all respects the petition for leave to file the same.

The appellees pleaded in substance, that the union school district was duly formed; and that two-thirds of all the legal voters, residing within the territory embraced therein, signed petitions for its formation. Replication was filed to the plea as subsequently amended,

denying that the union school district was legally formed for the reason above stated.

By agreement of parties the cause was tried by the court without a jury, upon an agreed state of facts submitted to the court. The final judgment of the court found the issues for the appellees, to which the People and the relator jointly and severally excepted. By said judgment the court ordered, that the information be dismissed and the writ of *quo warranto* be quashed and that the appellees recover their costs of suit from the relator. The present appeal was taken to this court from the judgment so entered by the circuit court.

THOMAS M. JETT, State's Attorney, and JAMES M. TRUITT, for appellant.

LANE & COOPER, for appellees.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

By section 46 of article 3 of chapter 122 of the Revised Statutes entitled "Schools," it is provided that "trustees of schools in newly organized townships shall lay off the township into one or more school districts, to suit the wishes or convenience of a majority of the inhabitants of the township, and shall prepare  *  *  *  a map of the township, on which map shall be designated the district or districts," etc. Section 47 provides, that, "in a township where such division into districts has been made, the said trustees may, in their discretion, at the regular meeting in April, when petitioned as hereinafter provided for, change such districts as lie wholly within their townships, so as:  *  *  *  *Second*—To organize a new district out of territory belonging to two or more districts," etc. Section 48 provides, that "no change shall be made as provided for in the preceding section, unless petitioned for:  *  *  *  *Third*—By two-thirds of all the legal voters living within certain territory, con-

taining not less than ten families, asking that said territory may be made a new district." By section 51 it is provided, that union districts, such as the one in controversy is claimed to be, may in like manner be formed by the concurrent action of the several boards of the trustees of the townships, in which the district or districts affected lie, etc. These changes can only be made at the April meeting of the trustees of schools, (sec. 50), held on the first Monday of April of each year. The first Monday of April, 1895, was the first day of April, 1895.

By the agreed state of facts, a map or plat was introduced in evidence, showing the location of the four school districts, affected by the formation of the new union school district in controversy, and showing the location of the new school district in dispute, if any such was formed. This plat shows, that the original four school districts are numbered districts 1, 8, 2 and 7. District 1 lies in township 7, in range 5, west, in Montgomery county; district 8 in township 8, in range 5, west, in said county; district 2 is composed of territory in the three townships 7 and 8 in range 4, west, and township 7 in range 5; and district 7 lies in township 8 in range 4, west, in said county. The union school district is composed of territory taken from the four districts.

On March 9, 1895, several petitions, four in number, were filed with the several boards of trustees of schools of the four townships, parts of whose territory were embraced within the boundaries of the new district, asking for the formation of said new district. These petitions were signed by seventeen legal voters, living within the territory of the proposed new district on March 9, 1895. It is agreed, that seven legal voters, not including the three Butlers hereinafter named, lived within the territory of the proposed new district on March 9, 1895, but did not sign said petitions. It is also agreed, that John Butler, Frank Butler and M. P. Butler did not sign said petition. It is agreed, that all other persons, signing

said petitions, were not legal voters, residing in said territory at the date aforesaid, and were not legally qualified to sign said petitions. If the three Butlers above named were legal voters, living within the territory of the proposed new district on March 9, 1895, then, as they did not sign the petitions, there were ten legal voters within said territory, who did not sign said petitions. Said ten legal voters, not signing the petitions, and the seventeen legal voters who did sign the same, made an aggregate of twenty-seven legal voters living within said territory at that time. Eighteen is two-thirds of twenty-seven. Therefore, it would have required eighteen of said legal voters to sign the petitions, before the trustees of schools could acquire jurisdiction to act. As only seventeen of said legal voters signed the petitions, appellant contends that the trustees of schools did not acquire jurisdiction to act in the premises, and that, for that reason, said district was never legally formed, and now has no legal existence. If, however, the three Butlers above named were not legal voters, living within the territory embraced within the new district on March 9, 1895, when the petitions were filed as aforesaid, then there were only twenty-four legal voters, living within such territory on March 9, 1895, to-wit: the seventeen, who signed the petitions, and the seven who did not sign the same. In such case, sixteen being two-thirds of twenty-four, the petitions were signed by one more than the requisite number of legal voters, whose signatures are required by the statute. Appellees contend, that the said Butlers were not legal voters living within said territory at the time aforesaid, and that, for this reason, they should not be enumerated in determining the number of legal voters living within said territory at said time; and that, as seventeen legal voters signed the petitions, they constituted the required two-thirds of all the legal voters, living within the territory aforesaid at the time aforesaid, and that the trustees of schools did ac-

quire jurisdiction to act in the premises, and that said district was legally formed.

Therefore, the only question involved in this case is, whether John Butler, Frank Butler and M. P. Butler were on March 9, 1895, when these petitions were filed with the respective boards of trustees, legal voters living within the territory embraced within the new union district which it was proposed to form.

Prior to February 28, 1895, the three Butlers above named were legal voters, residing on a part of section 35, in township 8, range 5, west. At that time all of said section 35 was included within said school district No. 8 as shown on the map. It is agreed, that said Butlers were legal voters of said school district No. 8, and were legal voters of the town of South Litchfield, of which town said district 8 forms a part, and that they were entitled to vote in the east voting district of said town of Litchfield at all general elections. On February 28, 1895, before any of said petitions were filed with said trustees, the Butlers removed from said section 35 to a part of section 25 in said township 8, range 5, west, where they have since permanently resided, and where they now reside. It is agreed, that the part of said section 25, to which said Butlers removed as aforesaid, is within the boundary of said school district 8, as said district was bounded when the proposed new union school district was petitioned for, and is also within the territory of the proposed new union school district. It is further agreed, that the new place of residence of the Butlers in section 25 is within the town of South Litchfield and within the east voting district of said town, where the Butlers were entitled to vote at all general elections. It is also agreed, that said Butlers had actually and permanently resided within the territory, embraced in the proposed new union school district, at least nine days before said petitions were filed with the trustees of schools, and that none of said Butlers signed said petitions.

Before the Butlers changed their residence on February 28, 1895, they did not live in any portion of the territory, out of which it was proposed to form the new union school district. Up to that date they lived on a part of section 35, which was not embraced within the proposed territory of the new district. But on that day they moved upon a part of section 25, which was embraced within the territory constituting the new district. Therefore, the only change made by them was, that before February 28 they did not live on the territory within the proposed new district, while thereafter they did reside upon such territory. But their status as voters was not in any respect changed by this change in their residence. Before the change they resided in school district No. 8 in township 8, range 5, west, and were legal voters of the said school district No. 8, and were legal voters in the east voting district of said town of South Litchfield. After they moved upon section 25, they were still legal voters of district No. 8 in township 8 aforesaid, and were legal voters in the east voting district of the town of South Litchfield. The Butlers did not move outside of the school district, voting district or township, in which they resided before their removal, and in which, as it is agreed, they were legal voters. They merely moved from one part of school district 8 to another, and the part they removed to chanced to be within the territory described in the petition for the new district. The statute only requires, that the persons, signing the petitions to the number of two-thirds, shall be *first:* legal voters, and *second:* shall live within the territory, which is to be included in the new district, if formed. The statute makes no requirement as to the length of time, during which the signers of the petitions must live within the proposed territory in order to qualify them to sign the petitions.

From this statement of the facts, it would seem to be clear, that the three Butlers were legal voters, living within the territory, out of which it was proposed to

form the new union school district.   But the contention of the appellees is, that the Butlers, in order to be legal voters within the meaning of this act, must have resided within the territory of the proposed new district for thirty days, and that, as they had only lived there nine days, they had no right to be enumerated.  Section 1 of article 7 of the constitution provides, that "every person, having resided in this State one year, in the county ninety days, and in the election district thirty days, next preceding any election therein,   *   *   *   shall be entitled to vote at such election."   Counsel for appellees contend, that the territory, proposed to be organized into the new school district, is an election district, or voting precinct, and that it was necessary, that the Butlers should possess the qualification of electors in the new district on March 9, 1895, in order to be enumerated.   It is urged, that, in school elections, each district constitutes a voting precinct.   We are unable to see how the contention thus made by the appellees can be sustained upon reason, or principle.  The Butlers could not be electors in the new district on March 9, 1895, for the reason that the new district was not then formed.   On that day they were legal voters of district 8, and resided on that part of the territory of that district, which was described in the petitions for the new district.   The status, which they would sustain to the new district after the same was formed, is not in question in this case.   Their qualifications as legal voters on March 9, 1895, must be decided by the relations, which they sustained on that day to some then existing public *quasi* corporation, and not by the relations, which they might afterwards sustain to a public *quasi* corporation not then existing.   The appellees themselves cannot be said to have been electors of the new district on March 9, 1895, if a residence of thirty days in such district is required to make them such electors, because the new union school district had not existed for thirty days prior to March 9, 1895.   Counsel for

appellees fail to distinguish between the actual physical territory, embraced within the new school district to be formed, and the invisible political·organization, or *quasi* corporation, called a union school district after its formation. On March 9, 1895, the Butlers were legal voters because, while then living on a part of section 25 within the proposed new district, they were at the same time legal voters of the old school district No. 8 in township 8 and in the east voting precinct of South Litchfield. They possessed all the qualifications of legal voters as much after the change in their residence, as before such change.

The case of *People* v. *Allen*, 155 Ill. 402, does not hold, as is claimed by counsel for appellees, that the territory, proposed to be organized into a new school district, is a voting district. That case merely holds, that two-thirds of the legal voters, residing within the territory of the proposed new district, must sign the petitions, in order to give the trustees of schools jurisdiction·to act. Both parties here concede that proposition, that is, that the legal voters must be residents of the territory of the proposed new district.

Upon the whole, our conclusion is, that, on March 9, 1895, the Butlers were legal voters, living within the territory out of which it was proposed to form the new district, and that, as they did not sign the petitions, such petitions were not signed by two-thirds of the legal voters, residing within the territory of the proposed new union school district. It follows, that the school trustees had no jurisdiction to form the new district, and that the same was illegally organized. Therefore, the court below erred in dismissing the information, and quashing the writ of *quo warranto.*

Accordingly, the judgment of the circuit court is reversed, and the cause is remanded to that court with directions to enter judgment of ouster against appellees.

*Reversed and remanded.*