THE PEOPLE *ex rel.* Henry Sackmann *et al.*

*v.*

A. L. KEECHLER *et al.*

*Opinion filed December 18, 1901—Rehearing denied February 7, 1902.*

1. SCHOOLS—*petition to form new district—how to be signed.* Clause 3 of section 48 of article 3 of the School law, providing for a petition to be signed by two-thirds of all the legal voters within certain territory containing not less than ten families, asking that said territory be made into a new district, relates to the organization of a new district out of territory belonging to two or more districts.

2. SAME—*section 51 of article 3 of School law construed.* Boards of trustees of two or more townships affected, acting concurrently, may, under section 51 of article 3 of the School law, when duly petitioned, make changes in districts lying adjacent to each other but in separate townships, or in single districts formed of parts of two or more of such townships, the same as may be done by the trustees in the case of districts lying wholly in one township.

3. SAME—*word "adjacent" construed as used in section 51 of article 3 of School law.* The term "adjacent to each other," used in section 51 of article 3 of the School law, authorizing the boards of trustees of the townships in which the district or districts affected lie to organize a new school district out of territory belonging to two or more districts "adjacent to each other," means that the districts the territory of which is taken shall be so united or joined together as to form a compact district.

4. SAME—*new district may be formed out of whole territory of two or more districts.* Clause 2 of section 47 of article 3 of the School law, authorizing the trustees "to organize a new district out of territory belonging to two or more districts," does not limit the new district to parts, only, of territory belonging to two or more districts, but such new district may include the whole territory of two or more districts. (*People v. Allen,* 155 Ill. 402, adhered to.)

5. SAME—*when board of education may be elected for new school district.* When a new district is formed which has a population of not less than one thousand nor more than one hundred thousand, the election must be for a board of education instead of for three directors.

6. SAME—*election of board of education need not be on third Saturday in April.* Section 2 of article 6 of the School law does not require the election of the president and members of the board of education to be held on the third Saturday in April, nor is any census of the district, general or special, required, since such provisions apply only when additional members of the board of education are to be elected.

7. SAME—*section 9 of article 6 does not apply to elections in new districts.* Section 9 of article 6 of the School law does not apply to the election of a board of education in a newly formed district, but only where a change is made from a board of directors to a board of education.

APPEAL from the Circuit Court of St. Clair county; the Hon. M. W. SCHAEFER, Judge, presiding.

CHARLES W. THOMAS, for appellants.

FREELS & JOYCE, and E. C. KRAMER, for appellees.

Mr. CHIEF JUSTICE WILKIN delivered the opinion of the court:

An information in *quo warranto* was filed in the circuit court of St. Clair county on the 18th day of June last, by the Attorney General, on the relation of Henry Sackmann, William Cunningham and E. Halloran, claiming to be school directors of district No. 2, township 2, north, range 10, west, in said county, against appellees, to show by what right they claimed to hold and exercise the offices of president and members of the board of education of union district No. 10, in township 2, north, range 9, west, and township 2 north, range 10, west, in the same county. The information was of two counts, the first questioning the election of the respondents to said offices, and the second, the legality of the organization of said union district.

The plea upon which the hearing was had averred that on the first day of April, 1901, at the meeting of the trustees of schools of each of said townships held on that day, the petition mentioned in said information for the organization of a new school district out of the territory described therein was presented. It sets out the petition at length, which asks for the formation of a new school district out of the territory therein described, by metes and bounds, which included districts Nos. 1 and 2 and a

portion of district No. 4, in township 2, north, range 10, west; also district No. 2, except three blocks in the southern extremity of the district, and a part of district No. 8, in township 2, north, range 9, west,—which territory contained more than ten families; avers that the petition was signed by at least two-thirds of the voters residing in the territory described in the petition; that due notice of the filing of the petition was presented to all parties, as required by the statute; that the relators, as directors of district No. 2, township 2, north, range 10, appeared before the trustees and resisted the granting of the petition; that the prayer of the same was granted by the trustees and each of the subsequent steps required by the statute duly taken; that said relators took an appeal from such order to the county superintendent of schools, as provided by the statute in such case, and that on the 27th day of April, 1901, he made an order affirming in all things the said action of the boards of trustees, and did thereafter, on May 5, 1901, give notice in writing to the several clerks of said boards of school trustees of his action and order in the premises, which order said clerks, respectively, entered upon the records of said boards; that the said several clerks thereupon, and within ten days thereafter, made copies of said records and filed the same with the county clerk of said county; that the clerk of the board of trustees of township 2, north, range 10, west, did, within the time aforesaid, file with the county clerk a map of the townships, showing said union school district No. 10, and a list of the tax-payers therein, and that said union school district No. 10, at the time of its formation and organization as aforesaid, and at the time of said election, had thirty thousand inhabitants residing therein. It then proceeds to show the calling of an election for members of the board of education in said union district, setting out the various steps required by the statute to have been taken, and concludes, "and by this warrant the defendants have held, and still hold, the

said offices, as they well might and still may, without this, that they, or either of them, has usurped or does now usurp the same, as is alleged in said information; and this they are ready to verify, wherefore they pray judgment," etc. To this plea the relators filed a general and special demurrer, setting forth at length numerous grounds of special demurrer.

It is first contended that the amended plea is bad because it neither denies nor confesses and avoids the material allegations of the second count of the information. In *quo warranto* to oust a party from an office the defendant must either disclaim all right to the office, or justify by showing his title. "If he justifies he must set out his title specially. * * * The people are not bound to show anything. Being called upon to show by what warrant he exercises the functions of the office, if he does not exhibit good authority for doing so the people are entitled to judgment of ouster." (*Catlett* v. *People ex rel.* 151 Ill. 16, and cases cited.) The sufficiency of the amended plea does not depend upon whether it denies or confesses and avoids the material allegations of the second count of the information. It must be good, in and of itself, to show the right of the respondents to the offices which they are charged with usurping.

It is conceded that the plea shows good title in the respondents to the several offices in question if the petition therein set out was sufficient to authorize the concurrent action of the two boards, and that it was only necessary that it should be signed by two-thirds of the legal voters residing in the territory, and not by a majority of the legal voters residing in the districts affected, and that said union district, if legally organized, was entitled to elect a board of education instead of three directors.

Section 46 of article 3, chapter 122, of our statutes (Hurd's Stat. 1899, p. 1532,) provides that the trustees of schools in newly organized townships shall lay off the

township into one or more school districts, to suit the wishes or convenience of a majority of the inhabitants of the township, etc. The next section (47) provides that where such division into districts has been made, the "trustees may, *in their discretion,* at the regular meeting in April, when petitioned as hereinafter provided for, change such districts as lie wholly within their townships, so as,—first, to divide and consolidate districts; second, to organize a new district out of territory belonging to two or more districts; third, to detach territory from *one* district and add the same to *another* district adjacent thereto." The next section (48) provides that no change shall be made, as provided for in the preceding sections, unless petitioned for, "first, by a majority of the legal voters of each of the districts affected by the proposed change; second, by two-thirds of the legal voters living within certain territory, described in the petition asking that the said territory be detached from one district and added to another; third, by two-thirds of all the legal voters living within certain territory, containing not less than ten families, asking that said territory may be made a new district."

We have held that the first and second clauses of section 48 have nothing to do with the formation of a new district; that the first of those clauses relates to the division and consolidation of districts, and the second to detaching territory from *one* district and adding the same to *another* district adjacent thereto, and the third, viz., that the petition shall be signed by two-thirds of the legal voters living within certain territory, containing not less than ten families, asking that said territory may be made a new district, relates to the organization of a new district out of territory belonging to two or more districts. *Parr* v. *Miller,* 146 Ill. 596; *People* v. *Allen,* 155 id. 402; *Hamilton* v. *Frette,* 189 id. 190.

Section 51 of article 3 of the same act provides that "at the said April meeting, by the concurrent action of

the several boards of trustees of the townships in which the district or districts affected lie, each board being petitioned as provided for in section 48 of this article, the same changes may be made in the boundaries both of districts which lie in separate townships, but adjacent to each other, and of districts formed of parts of two or more townships, as are permitted to be made in districts which lie wholly in one township." That is, with the limitation that the districts to be affected are adjacent to each other, or that a district is formed of parts of two or more townships, the boards of trustees in the several townships, acting concurrently, may make the same changes in districts as can be made in districts lying wholly within a single township.

The first contention of counsel for appellants is, that the school districts affected by the change made in the organization of this new district were not "adjacent" to each other, and hence the boards of trustees of townships 9 and 10 had no jurisdiction to make the same. The position is, that inasmuch as district No. 2, township 2, north, range 10, west, is not adjacent to any district affected lying in township 2, range 9, therefore there was no power in the two boards of trustees to act concurrently to make the change. On the other hand, it is insisted by counsel for the respondents that the term "adjacent to each other" means no more than that the new district must be composed of adjoining or compact territory,— that is, if district No. 2 adjoined district No. 1 in township 10, and the latter district adjoined district No. 2 in township 9, then the districts were adjacent to each other, within the meaning of the statute. The word "adjacent" is defined by Webster and other lexicographers to mean, "to lie near;" "close, or contiguous." It is sometimes said to be synonymous with "adjoining," "near," "contiguous." In some decisions courts have held it to mean "in the neighborhood or vicinity of;" in others, "adjoining or contiguous to." (*State ex rel.* v. *Kansas City,* 50 Kan. 522; *Camp*

*Hill Borough*, 142 Pa. St. 517; *United States* v. *Northern Pacific Railroad Co.* 29 Alb. L. J. 24; *Henderson's Lessee* v. *Long*, 1 Cook, 129; 1 Am. & Eng. Ency. of Law,—2d ed.—p. 633; *Miller* v. *Cabell*, 81 Ky. 184; *In re Municipality, etc.* 7 La. Ann. 76.) We do not regard any of these cases as furnishing a guide by which to arrive at a definition of the word as used in the foregoing section. It has no arbitrary meaning or definition. Its meaning must be determined by the object sought to be accomplished by the statute in which it is used. This consideration manifestly controlled each of the courts in the interpretation placed upon the word in the cases cited.

The sections of the School law which authorize the board of trustees to change the districts in a single township, as well as section 51, *supra*, were manifestly intended by the legislature to empower them to re-district the township or townships, "in their discretion," when properly petitioned for, to suit the wishes or convenience of a majority of the inhabitants of the township or townships. It is a matter of common knowledge that by changes in the population of townships and the school districts therein, changes in the boundaries of the latter frequently become necessary, and often absolutely imperative, in order that the inhabitants may be suitably provided with school privileges. No district has a vested right in the division of the township first made, or a right to insist that its boundaries shall remain for all time to come as originally fixed. We entertain no doubt that when the legislature authorized "the boards of trustees of the townships in which the district or districts affected lie" to organize a new school district out of territory belonging to two or more districts "adjacent to each other," it simply meant that the districts, the territory of which might be taken, should be so united or joined together as to form a compact district. To give the words "adjacent to each other" any other meaning would often defeat the object and purpose of the statute in au-

194—16

thorizing the re-districting of a township or townships. The construction insisted upon would not only deprive the boards of trustees in adjoining townships from forming new districts out of territory belonging to two or more districts where the districts affected did not adjoin each other, but would also often prevent them from making changes in the districts by consolidating more than two, or by detaching territory from one or more and adding two or more consolidated districts, even though petitioned for by a majority of the legal voters in each and all of the districts affected.

It is again insisted that the organization of the new district was not authorized by statute, because, as is said, "the law does not permit the consolidation of districts by a subterfuge, which results in denying to the voters of the district the right to pass upon the question whether the franchise of their districts shall be surrendered. No consolidation can take place unless petitioned or voted for by a majority of the voters of each district to be affected." The position, as stated, may be admitted; but there was clearly no attempt to *consolidate* districts in the proceeding set up in the plea, nor does it anywhere appear that the formation of a new district was a mere subterfuge to affect the purpose of *consolidating* districts. We must assume, for the purpose of this decision, that the boards of trustees of the two townships, upon the presentation of the petition set up in the plea, in their discretion, found it proper, in order to meet the wishes or convenience of a majority of the inhabitants of the territory, to form the district prayed for, and how that object could have been accomplished by *consolidating* districts or by detaching territory from one district and adding it to another we are at a loss to perceive. In fact, it is not claimed that a petition and order for the consolidation of districts would have accomplished the purpose, but the contention seems to be that what was done amounted to a consolidation of districts and the detach-

ing of territory from other districts and adding it to the consolidated districts. The statute nowhere authorizes the doing of such a thing. Districts may be consolidated, —not parts of districts, but districts as theretofore laid off and platted. Nor does the statute authorize the detaching of territory from different districts and adding the same to other consolidated districts, but only "to detach territory from *one* district and add the same to *another district* adjacent thereto." In other words, if the boards of trustees were authorized, under the statute, to form a district out of the territory described in the petition at all, they could only do so under the second provision of section 47, that is, "to organize a new district out of territory belonging to two or more districts."

It is contended by the learned counsel, however, that this provision of the statute does not authorize the formation of a new district out of the whole of the territory belonging to two or more districts, and while it is conceded that the contrary was held in *People* v. *Allen*, 155 Ill. 402, it is insisted that decision is wrong and should be overruled. We are unable to understand how the language of the statute, "out of territory belonging to two or more districts," can be held to necessarily mean only "out of parts of territory belonging to two or more districts," nor why this latter construction should be given to the statute in order to carry out the intent and purpose of the legislature. We repeat, the object of the petition in this case (and the same was true in the *Allen case*) was not to consolidate two districts nor to detach territory from one district and add it to another, but to form a new district out of the territory belonging to two districts and parts of the territory belonging to other districts. If the boards of trustees, or the superintendent of schools upon appeal, had discovered from the petition that it was "a subterfuge" to consolidate districts or to detach territory from one district and add the same to another adjacent thereto, for the purpose of depriving

the legal voters of any district affected of their right to be heard, such boards or superintendent of schools would no doubt have been justified, and it would have been their or his duty, to deny the prayer of the petition. But the petition shows, upon its face, a legal purpose,—one authorized by the statute,—and is in conformity with the provision of the law. Why should we, in this proceeding, say that such purpose did not exist,—that it was a subterfuge or fraud? We have held in the cases first above cited that the decision of the trustees or superintendent of schools is final and conclusive upon that question. (See, also, *Trustees of Schools* v. *School Directors*, 190 Ill. 390.)

Section 49 of article 3 of the School law provides that in districts having a population of not less than one thousand, etc., "desiring a change of boundaries, the question of such change may be submitted by the trustees to a vote of the people instead of by the petition provided for in the preceding section, and when petitioned so to do by twenty-five legal voters of the district, the school board of the district shall submit the question of the change desired to the voters of said district, at a special election called for that purpose, and held at least thirty days prior to the regular April meeting." It seems to be thought that under this section the new district could not be formed upon a petition, but should have been upon a vote of some of the districts which, it is said, are shown to have had a population of more than one thousand. This can scarcely be seriously insisted upon. In the first place, the statute is not mandatory. The vote can only be had upon a petition by twenty-five legal voters of the district. But aside from this consideration, the petition required to authorize the formation of a new district was not one which could be signed or voted upon by the districts as such, but was required to be signed by at least two-thirds of the legal voters living within the territory. The legal voters of district No. 2, township 2, north, range 10, the directors of which are here complaining,

were not necessary parties to the petition. *Parr* v. *Miller, supra; People* v. *Allen, supra; Hamilton* v. *Frette, supra.*

We are unable to see what bearing sections 58, 63 and 64 of article 3, quoted by counsel for appellant,—the first of which relates to the bonded debt of territory set off from any district; the second, to the distribution of tax funds or other funds in the hands of the treasurer, where a new district has been formed by the trustees or county superintendent from a part of a district or from parts of two or more districts; or as by section 64, which provides for the appraisement and division of property in newly formed districts,—have upon the question here involved. They do not tend to show, as contended, that new districts may not be formed out of the whole of the territory of two or more districts.

Nor do we agree with the construction placed upon the decisions of the superintendent of public instruction, as applied to the facts of this case.

It is finally insisted that the plea shows no title to the offices claimed by respondents, because the statute does not authorize the election of a board of education in newly formed districts, and if it did, the election could only have been held on some third Saturday. It is true, section 59 of article 3, chapter 122, provides that when the trustees of schools shall organize a new district it shall be the duty of the clerk of the board of trustees, if no appeal is taken, to order, within fifteen days, an election to be held at some convenient time and place within the boundaries of such newly organized district for the election of "three school directors;" but section 2 of article 6 of the same chapter also provides, that "in all school districts having a population of not less than one thousand and not over one hundred thousand inhabitants and not governed by any special act in relation to free schools now in force, there shall be elected, instead of the directors provided by law in other districts, a board of education, to consist of a president of the board of

education, six members and three additional members for every additional ten thousand inhabitants. Whenever additional members of such board of education are to be elected by reason of increased population of such district, such members shall be elected on the third Saturday of April succeeding the ascertaining of such increase by any special or general census, and the notice of such election shall designate the term for which the members are to be elected, so that one-third of the board shall be elected for each year: *Provided*, that in no case shall said board consist of more than fifteen members." This section and section 59 of article 3 should be construed together, so that when a new district is formed which has a population of not less than one thousand and not over one hundred thousand, the election must be for a board of education instead of three directors.

The plea in this case avers that the new district had a population of more than thirty thousand, which was sufficient, under section 2, *supra*, to authorize the election of a president of the board of education and twelve members thereof. That section does not provide that the board, in the first instance, shall be elected only on the third Saturday of April. That provision relates to the election of additional members to be elected by reason of the increased population of such districts. Nor does it require any census of the district, special or general, to be taken in order to authorize the election of a president and members of the board. It is only when additional members are to be elected that the increased population must be ascertained by the census. Counsel for appellants, however, seems to understand that section 9 of article 6 must control in this case. It provides: "At the first election of directors succeeding the passage of this act, in any district having a population of not less than one thousand inhabitants by the census of 1880, and in such other districts as may hereafter be ascertained by any special or general census to have a population of

not less than one thousand inhabitants at the first election of directors occurring after taking such special or general census there shall be elected a board of education, who shall be the successors of the directors of the district," etc. This section has no application to the election of a board of education in newly formed districts, but provides only for a change from a board of directors to a board of education.

On the whole record we are satisfied the decision of the circuit court is in conformity with a proper construction of the several sections of the School law as to the organization of the district in question, and that the respondents were legally elected to the offices of president and members of the board of education in such district. Its judgment will accordingly be affirmed.

*Judgment affirmed.*