**BUCHANAN COAL CO. et al. v.
MANIS et al.**

Court of Appeals of Kentucky.
Dec. 14, 1951.

Rehearing Denied Feb. 29, 1952.

922

Willis W. Reeves and John Campbell, Hazard, for Buchanan Coal Co. et al.

Barney W. Baker, Hazard, for Minta Manis et al.

Craft & Stanfill, J. W. Craft, Sr., and W. A. Stanfill, all of Hazard, for Columbus Mining Co.

CLAY, Commissioner.

This action was brought by the heirs of S. M. Napier to recover damages for the use of their land in the transportation and processing of coal by appellants, to cancel a lease, and to obtain an injunction. Separate appeals are before us, which we shall consider together. The terms of the judgment, objected to in certain respects by both parties, will be set forth after a brief statement of the facts.

In 1917 S. M. Napier executed a coal mining lease of what is designated the "Napier Tract," to one Eversole. It was for a term of 50 years, with right to renew for another 50. The lessee was granted the free and exclusive right to use and occupy the surface "for any and all purposes that may be necessary or proper, or by the lessee deemed necessary or proper, in the *mining operations* of the lessee upon the leased premises, *and upon other property owned, leased or acquired by the lessee adjoining or adjacent thereto * * *."* (Our italics.) Article II provided that free of cost to the lessee all improvements, structures, and ways on the leased premises should remain there "for the mining and removal of coal from other lands owned, leased or acquired by the lessee, as well as from the leased premises * * *."

The lease provided a royalty of 15 cents per ton on the coal mined from the principal tract, and a minimum royalty of $600 per year. At the time it was executed Eversole owned the coal under certain adjoining or adjacent tracts. Eversole thereafter transferred all his rights to appellee, Columbus Mining Co. (hereinafter referred to as Columbus), which subsequently acquired coal interests in other neighboring tracts. In 1927 Columbus stopped mining coal on the Napier Tract and ceased paying royalties. It did, however, continue to mine and remove coal from adjoining or adjacent properties until 1947 when it subleased the property. The rights under this sublease were subsequently transferred to appellants, I. H. Buchanan, Buchanan Coal Co. (hereinafter referred to as Buchanan Co.), and North Star Co. (hereinafter referred to as North Star).

Since 1947 Buchanan Co. and North Star have used the Napier Tract and its extensive structural facilities, not only for transporting and processing coal mined on immediately adjoining or adjacent tracts, but for coal it mines or buys from other lands in the general vicinity.

Appellees, who filed this suit, are the heirs of the original lessor, S. M. Napier. They asked that the lease be cancelled on the ground that no more coal is being mined on the leased premises or adjoining tracts, demanded minimum royalties from 1927 to date, and also sought to recover a 2 cent royalty for coal transported over the Napier Tract and a 5 cent royalty for coal processed thereon by either Columbus, Buchanan Co. or North Star.

The judgment decreed that: (1) the lease had not terminated because all mineable coal had not been removed from the Napier and other tracts; (2) the rights under the lease extended to six adjoining and adjacent tracts; (3) Columbus must pay the minimum royalty of $600 a year from 1927 to date; (4) Buchanan, Buchanan Co., and North Star shall pay appellees the sum of $1890.45 as the reasonable charge

for the use of the Napier Tract in the transporting of coal purchased and taken from other lands not adjoining or adjacent to the Napier Tract; (5) Columbus, Buchanan, Buchanan Co. and North Star are enjoined from hauling any coal, not taken from adjoining or adjacent tracts, through or over the Napier Tract, or loading it there into tipples or bins.

Appellants Buchanan, Buchanan Co., and North Star take issue with practically the entire judgment on the ground that the original lease did not restrict the use of the Napier Tract by the lessee (or his successors), and therefore they or Columbus should not be required to pay anything (even the minimum royalty) to appellants, nor should they be enjoined from using the property for any coal mining purpose, regardless of where the coal is mined or from what source or in what manner it is acquired. Their argument is that the language of the lease is: (1) very broad; and (2) the original lessor consented (by failure to object) to an unlimited use of the Napier Tract and its facilities from the time Columbus ceased mining coal there in 1927 until his death in 1935, without payment of any compensation. (After the entry of judgment, Columbus paid in full the minimum royalty award.)

■ It is true the language of the lease is broad. However, its initial objective was "for the purpose of mining and removing the coal" from the Napier Tract. This purpose was further extended in Article I to "the *mining operations* of the lessee upon the leased premises and upon *other property* owned, leased, or acquired by the lessee *adjoining or adjacent* thereto." (Our italics.) Certain language in Article II referring to "lands owned, leased, or acquired by the lessee" obviously refers to the same property referred to in Article I. From a careful reading of this lease and an understanding of the developed facts, it is apparent that the Napier Tract was to be the "front" for an extensive mining operation on lands in the immediate vicinity in which the lessee had or should acquire an interest.

The words "adjoining or adjacent" must be given some effect. While "adjoining" means meeting or touching, "adjacent" means lying close together but not necessarily in actual contact. Webster's New International Dictionary, Second Edition. Appellants cite a number of cases wherein the word "adjacent" has been construed to cover property lying anywhere from 1,000 feet to 25 miles from the principal tract. One of their chief authorities is Brotherhood Inv. Co. et al. v. Coal River Min. Co. et al., 4 Cir., 46 F.2d 976. Therein a party acquired mining rights in a 44 acre tract of land at a time when he owned a much larger tract almost adjoining it, but being separated by a 1,000 foot strip. The lessor was given a right to use the leased land for the manufacture and removal of coal from other land "owned and adjacent" thereto. The court properly held the larger tract was included within the terms of the lease. A number of definitions of "adjacent" are quoted in this opinion, and the general import of the term is well delineated.

■ However, neither the case just discussed, nor the others cited, throw much light on our question. The controlling principle, as set forth in another case cited by appellants, People ex rel. Sackmann et al. v. Keechler et al., 194 Ill. 235, 62 N.E. 525, 527, is that the meaning of the term "must be determined by the object sought to be accomplished".

■ Appellants apparently take the position that "adjacent" means anything in the neighborhood or environs, and that they may use the Napier Tract for any coal processing or transportation purposes which they consider practicable. This ignores completely the particular mining development contemplated by the parties when the lease was executed. As said above, the purpose to be accomplished is the fundamental guide in construing this term. While "adjacent" lands need not abut the Napier Tract or even adjoining tracts, the term constituted some restriction, and it was obviously intended that other lands of the lessee would have some operative re-

924

lationship with the mining "front" on the Napier Tract. To put it another way, it is apparent that the "other lands" should have some physical connection with the Napier Tract in a single comprehensive mining operation. Appellants wish to pervert this objective by using the Napier Tract for independent coal processing and transportation activities. The judgment of the lower court was correct in denying this right.

 Appellants' next contention is that the heirs are estopped to assert their rights under the lease, because for a long period of time the original lessor, and they themselves, permitted an unlimited use of the property. While it is true that Columbus, Buchanan Co., and North Star may have engaged, without objection, in practices not covered by the lease, it is not shown that the lessor or his successors had knowledge of the complete scope of appellants' operations. It does appear in evidence that Columbus, Buchanan Co., and North Star have expended large sums of money on the Napier Tract in the construction and maintenance of tipples, bins, shops, roadways and other buildings which were used in the mining, processing and shipment of coal. However, all of these improvements could be used, and were used, for the mining operations within the contemplation of the lease. Even if we could say the original lessor and his successors did not object to any use of the premises or its improvements, they were not bound to know and cannot be held to have consented to a wrongful use thereof.

We turn now to the appeal taken by appellees. They contend first that the lease should have been cancelled. Their position in this respect is untenable for three reasons: (1) the lease does not provide for termination short of the term period; (2) the mining purposes have not been completely accomplished; and (3) they have accepted the minimum royalty payments adjudged as owing by the Chancellor and thereby acknowledged the continued effectiveness of the lease.

They next maintain that the Chancellor erred in not restricting the lessees' rights to only two tracts they concede are adjoining or adjacent to the Napier Tract. Their principal argument on this score seems to be that Buchanan Co. and North Star do not have an interest in the other tracts which the Chancellor adjudged to be adjacent or adjoining. While the record is not clear on this point, it is not necessary that these two companies themselves have an interest in the other tracts, but the rights under the lease may be exercised if Columbus had, or has, an interest therein. We think the proof establishes that the original lessee Eversole, Columbus, Buchanan, Buchanan Co., and North Star collectively owned, leased or acquired interests in the adjoining or adjacent tracts set forth in the judgment, and acting under the lease, they have not violated any of appellees' rights.

We think the Chancellor fairly and properly adjudged the rights of all parties to this litigation.

The judgment is affirmed.

COMBS, J., not sitting.