FOSTER & KLEISER, Plaintiff-Appellee, v. THE CITY OF CHICAGO *et al.*, Defendants-Appellants.

First District (3rd Division)   No. 85—3612

Opinion filed August 20, 1986.

Judson Miner, Acting Corporation Counsel, and Altheimer & Gray, both of Chicago (Oscar O. D'Angelo, Robert J. Rubin, and Jodi Landsman Kornfeld, of counsel), for appellant City of Chicago.

Rock, Fusco, Reynolds & Heneghan, P.C., of Chicago (Thomas J. Heneghan and Michael J. Murray, of counsel), for appellee.

JUSTICE McNAMARA delivered the opinion of the court:

Plaintiff, Foster & Kleiser, received permits from defendant, the city of Chicago, to erect two electric signs. After plaintiff had erected the signs, the city revoked the permits. Plaintiff filed an action for injunctive, declaratory and other relief, seeking to enjoin the city from

revoking the permits. Following a trial without a jury, the trial court held that although the permits were valid, they were properly revoked because the sign structures were immediately adjacent to certain landmark buildings. The court also held, however, that the permits had ripened into property rights and thus plaintiff was entitled to damages. The city appeals from the court's ruling that the permits were valid and had ripened into property rights warranting damages. Plaintiff cross-appeals from the court's denial of an injunction and other relief, and its holding that the city properly revoked the permits.

On February 15, 1983, plaintiff filed applications with the city's department of inspectional services for two electric sign permits. The sign structures were to be affixed to the Chicago Transit Authority elevated railway, hanging directly over the intersections of Van Buren and Dearborn streets, and Lake and Dearborn streets. Plaintiff calculated the amount of the permit fee based on figures set by ordinance for signs hanging over the public way. The applications indicated that the structures were 30 feet above street level and 381½ square feet in size. On April 5, 1983, the department issued permits for the two electric signs. The permits specified that "[a]ll work is to be done in accordance with the ordinances of the City of Chicago."

Plaintiff also applied for zoning certificates from the office of zoning administrator. These applications indicated that the structures were 30 feet above curb level and projecting over the public way. In addition, the application for the sign to be located at Van Buren and Dearborn specified that the sign would be 420 feet from the expressway. On June 28, 1983, the Chicago city council considered the committee on zoning's recommendation that the council authorize the issuance of permits for the signs. The journal of the proceedings of the city council states:

> "*Ordered.* That the Commissioner of Inspectional Services is hereby directed to issue a sign permit to Foster & Kleiser *** for the erection of a sign/signboard over 24 feet in height and/or over 100 square feet (in area of one face) at [locations]. ***
>
> Such sign shall comply with all applicable provisions of Chapter 194A of the Chicago Zoning Ordinance and all other applicable provisions of the Municipal Code of the City of Chicago governing the construction and maintenance of outdoor signs, signboards and structures."

The city clerk's certification attached to the journal deletes the word "ordinance" and replaces it with the word "order" in each in-

stance. In November 1983, plaintiff installed the sign structures but did not place advertisements on the structures.

On January 24, 1984, the department of inspectional services wrote a letter to the landmark commission, submitting the two permit applications for the commission's review. On the same day, the department wrote a letter to plaintiff stating that the landmark commission questioned the legality of the city council action taken on June 28, 1983. The letter notified plaintiff that the permits were therefore revoked, and would remain void unless approved by the landmark commission.

The structure in question at Van Buren and Dearborn is adjacent to the Monadnock Building, the Fisher Building, and the Old Colony Building, all of which have been declared landmarks. The structure at Lake and Dearborn is adjacent to the Harris/Selwyn Theaters, both of which have been declared landmarks.

On February 2, 1984, the landmark commission wrote a letter to plaintiff stating that pursuant to the procedure set out in section 21—64.1(a) of the Chicago Municipal Code, the commission had unanimously voted that the sign structures were adjacent to certain historical landmarks. The letter notified plaintiff that the landmark commission would not approve the permit applications. On September 19, 1984, the landmark commission conducted a hearing. On October 4, 1984, the commission issued its written recommendations to deny the permits on the basis of its finding that the proposed signage would have a negative impact on the historic and architectural integrity of the designated properties located immediately adjacent to the sites.

On October 29, 1984, and again on April 17, 1985, the finance committee of the city council considered the landmark commission's recommendation to deny the permits. On April 18, 1985, the city council accepted the landmark commission's recommendation and denied the permits for the erection of billboards. Pursuant to section 21—64.1(q) of the Chicago Municipal Code, the following ordinance was passed:

"*Be It Ordained by the City Council of the City of Chicago*:

Section 1. That in accordance with the findings of the Chicago Commission on Historical and Architectural Landmarks the applications by Foster & Kleiser for building permits to construct billboards on the C.T.A. elevated structures at Dearborn and Lake Streets and Van Buren and Dearborn Streets are hereby denied, and no permits shall be issued for said work."

Plaintiff was notified of this action by letters from the landmark commission and the city dated April 26, 1985, and April 29, 1985.

On May 9, 1985, plaintiff filed its complaint. At trial, Richard Hudak, plaintiff's vice-president and Chicago division regional manager, testified that plaintiff had expended approximately $22,000 to $25,000 to erect each sign structure, and would have to spend $10,000 to remove each structure. Timothy Cullerton, chief electrical inspector for the city, testified that when the permits were issued on June 28, 1983, plaintiff had complied with all requirements set up by his department.

The trial court found that plaintiff had obtained valid permits which had ripened into property rights warranting an award of damages. The trial court also held, however, that the city properly revoked the permits because the sign structures were "immediately adjacent" to the designated landmark buildings under the meaning of section 21—64.1(a) of the Municipal Code. The court further held that the theory of equitable estoppel could not be applied here to prevent the city from revoking the permits.

■■ The city first contends that it cannot be liable for damages in connection with the issuance or revocation of the permits because it is statutorily immune. Under section 2—104 of the Local Governmental and Governmental Employee Tort Immunity Act (Ill. Rev. Stat. 1985, ch. 85, par. 2—104), the city is granted absolute immunity for damages caused by the issuance, denial or revocation of any permit. (See also Ill. Rev. Stat. 1985, ch. 85, par. 2—206 (providing similar immunity to public employees).) Plaintiff maintains that the city's actions constitute a constitutional tort, and thus its actions are beyond the scope of the Immunity Act. (*Melbourne Corp. v. City of Chicago* (1979), 76 Ill. App. 3d 595, 394 N.E.2d 1291.) As we shall discuss below, we find no constitutional violations in the ordinance denying the permits. Thus, the Immunity Act precludes any liability on the part of the city.

■■ Plaintiff maintains that the city's revocation of the permits violates the first amendment. We find no first amendment violation where the applicable landmark ordinance is content neutral and is rationally related to the permissible governmental goal of the preservation of historical landmarks, and is unrelated to the suppression of ideas. (See *Members of the City Council of the City of Los Angeles v. Taxpayers for Vincent* (1984), 466 U.S. 789, 80 L. Ed. 2d 772, 104 S. Ct. 2118; *Metromedia, Inc. v. San Diego* (1981), 453 U.S. 490, 69 L. Ed. 2d 800, 101 S. Ct. 2882.) We also note that plaintiff has chosen not to place any advertisements on the sign structure.

■■ Plaintiff also maintains that the landmark ordinance itself is

an unconstitutional violation of its right to due process because of the language prohibiting the erection of signs "immediately adjacent" to landmarks. The ordinance states:

"(a) No building permit shall issue to any applicant without the written approval by the Commission on Chicago Historical and Architectural Landmarks in the following instances:

\* \* \*

(4) where such permit would allow the construction or erection of any sign or billboard within public view which may be placed on, in or immediately adjacent to any improvement which constitutes all or part of any structure or district designated as a 'Chicago Landmark' \*\*\*." (Chicago Municipal Code, ch. 21, par. 64.1(a) (1984).)

Both the landmark commission and the trial court found that the sign structures were "immediately adjacent" to the landmarks, despite the fact that the signs did not touch the landmarks. A reviewing court will defer to the administrative entity's practical construction of the ordinance unless it is clearly erroneous, arbitrary or unreasonable. (*Hammond v. City of Chicago* (1985), 139 Ill. App. 3d 98, 487 N.E.2d 87.) Here, the prohibition against signs being located "in" or "on" a landmark indicates that the additional reference to signs located "immediately adjacent" to a landmark does not require the sign and the landmark to be attached to each other. To construe "adjacent" as being synonymous with "attached" in this context would render the words "in" and "on" superfluous.

■ The definition of "adjacent" varies depending on its context, and may be synonymous with either "adjoining," or with "near" or "in the neighborhood or vicinity of." (*People v. Keechler* (1901), 194 Ill. 235, 62 N.E. 525 ("adjacent" school districts need not be touching to satisfy statute prohibiting changing boundaries of two or more school districts unless they are adjacent); *Chicago & Northwestern Ry. Co. v. Chicago Mechanics' Institute* (1909), 239 Ill. 197, 87 N.E. 933 ("adjacent" land means land lying near or neighboring, but not necessarily touching railroad property, to fall under railroad's power to condemn adjacent land for enlargement of its facilities for public convenience); but see *City of Dixon v. Sinow & Weinman* (1932), 350 Ill. 634, 183 N.E. 570 (ordinance requiring sidewalk to be laid adjacent to curb is fatally defective because "adjacent" means close but not necessarily touching and thus it is unknown whether sidewalk should be laid near or in actual contact with curb).) Thus, the word "adjacent" has no arbitrary meaning and must be defined by the object sought to be accomplished. *People v. Keechler* (1901), 194 Ill. 235,

62 N.E. 525.

In the present case, the purpose of the landmark ordinance is to protect both the aesthetic and physical integrity of landmarks of historical significance. It does not merely protect the physical structure from potential harm caused by nails, bolts or other attachment devices. Thus, an interpretation of "immediately adjacent" precluding 381½-square-foot sign structures from being suspended over intersections at which historical buildings are located is reasonable in light of the governmental interest sought to be protected.

■ Plaintiff argues, however, that such an interpretation of "immediately adjacent" violates its rights under the due process clause of the fourteenth amendment because the interpretation is void for vagueness. (See *Northern Illinois Auto Wreckers v. Dixon* (1979), 75 Ill. 2d 53, 387 N.E.2d 320, *cert. denied* (1979), 444 U.S. 844, 62 L. Ed. 2d 57, 100 S. Ct. 87.) As we have noted, however, we find that the language was reasonably interpreted here, and that it sufficiently informs those in plaintiff's position of the requirements for satisfying the landmark ordinance.

Plaintiff also raises procedural due process arguments, contending that no prerevocation hearing was given. As we shall discuss, plaintiff possessed no vested property right in the permits and thus had no right to a prerevocation hearing. *Citizens Utilities Co. of Illinois v. Metropolitan Sanitary District* (1974), 25 Ill. App. 3d 252, 322 N.E.2d 857.

■ Plaintiff maintains further it has a claim for inverse condemnation. Such a claim, however, requires a compensable taking. The objective of preserving structures and areas of historic significance is a permissible governmental goal, and we find no compensable taking has occurred here. There is no appropriation of property by government for its own use. *Penn Central Transportation Co. v. New York City* (1978), 438 U.S. 104, 57 L. Ed. 2d 631, 98 S. Ct. 2646, *reh. denied* (1978), 439 U.S. 883, 58 L. Ed. 2d 198, 99 S. Ct. 226.

■ ■ In the trial court plaintiff successfully argued that it acquired a vested property right in the permits and, on that basis, the court awarded damages to plaintiff, notwithstanding its holding that the permits' revocation was proper. Under Illinois law, permits are privileges from which no vested property rights attach. (*City of Chicago v. Westphalen* (1981), 93 Ill. App. 3d 1110, 418 N.E.2d 63 (no vested rights in building permit when permit revoked upon discovery that it was issued in error), *cert. denied* (1982), 455 U.S. 996, 71 L. Ed. 2d 858, 102 S. Ct. 1625.) No condemnation damages may be awarded when a revocable permit is revoked. (*Citizens Utilities Co. v.*

*Metropolitan Sanitary District* (1974), 25 Ill. App. 3d 252, 322 N.E.2d 857.) The privilege of erecting a sign projecting over a public way is permissive only and may be withdrawn at any time. (*City of Belleville v. Kesler* (1981), 101 Ill. App. 3d 710, 428 N.E.2d 617.) Here, the signs are located on the public elevated-train platform hanging over a public way, and therefore no vested rights can attach. A valid permit may ripen into a vested right when there has been a substantial change in position and the corresponding doctrine of equitable estoppel is invoked. See *Cities Service Oil Co. v. City of Des Plaines* (1961), 21 Ill. 2d 157, 171 N.E.2d 604; *Leisuretime Recreation Center VI, Inc. v. Byrne* (1981), 93 Ill. App. 3d 489, 417 N.E.2d 658; *Deer Park Civic Association v. City of Chicago* (1952), 347 Ill. App. 346, 106 N.E.2d 823.) However, as discussed below we find that no valid permit was issued and that the doctrine of equitable estoppel is not applicable here.

The city convincingly argues that plaintiff violated several ordinances, thus preventing it from acquiring vested property rights in the permits. The permits issued to plaintiff by the department of inspectional services on April 5, 1983, and the city council order of June 28, 1983, both required plaintiff to comply with all applicable provisions of the municipal code of the city of Chicago. The provisions are designed to address various concerns independently and failure to comply with any one provision will result in an ordinance denying final approval of the requested permits. Although the city points to several such violations, we shall comment on only three violations.

Section 21—64.1 of the Chicago Municipal Code requires the approval of the landmark commission prior to the issuance of any permit allowing the erection of any sign and billboard within public view which is "immediately adjacent" to any designated landmark. As we have noted, the trial court found, and we agree, that the signs here are immediately adjacent to a combined total of five landmark buildings. The landmark commission expressly disapproved issuance of permits to plaintiff, and thus the requirement of section 21—64.1 has not been met.

Secondly, section 36—30 of the Chicago Municipal Code requires persons fixing an "advertisement or other device calculated to attract the attention of the public" to any portion of a public way to obtain permission from the commissioner of streets and sanitation. Plaintiff did not obtain this approval.

Additionally, section 8.9(5) of chapter 194A of the Chicago Municipal Code requires the approval of the city council for advertising signs "within 500 feet of any major route." The sign at Van Buren and

Dearborn violated this ordinance, since it is 420 feet from the Congress Expressway.

Plaintiff also argues that the trial court erred in finding the doctrine of equitable estoppel not applicable in the present case. In *Paulus v. Smith* (1966), 70 Ill. App. 2d 97, 217 N.E.2d 527, however, this court held that where a hazard to be corrected affects public safety and general welfare, the doctrine of equitable estoppel should not be applied against a governing body. Plaintiff tries to distinguish *Paulus* by arguing that in that case no delay occurred before revocation of the permit, while a delay occurred here and in that case, whether an ordinance violation occurred was at issue. We find this distinction unhelpful. In both cases, the plaintiffs expended funds and installed the signs between the time of issuance and revocation of the permits. The lengthier time lapse here does not change the fact that in both cases plaintiffs acted in reliance on the permits' issuance. Also, in both cases a violation of ordinance occurred. (See generally *City of Chicago v. Roppolo* (1983), 113 Ill. App. 3d 602, 447 N.E.2d 870 (requiring subsequent changes in the law, or city officers inducing party to change position).) Plaintiff's reliance on *Deer Park Civic Association v. City of Chicago* (1952), 347 Ill. App. 346, 106 N.E.2d 823; is misplaced. In *Deer Park*, equitable estoppel was invoked only after the court found a zoning law was changed subsequent to the issuance of a building permit. (See also *Leisuretime Recreation Center VI, Inc. v. Byrne* (1981), 93 Ill. App. 3d 489, 417 N.E.2d 658 (equitable estoppel invoked to prevent revocation of a permit because of change in law subsequent to issuance of permit).) No similar change in law occurred in the present case. Moreover, if one is aware of the applicable ordinances, or makes no attempt to know them, the issuance of a permit contrary to the ordinances does not create an estoppel against the city. (*Cities Services Oil Co. v. City of Des Plaines* (1932), 350 Ill. 634, 183 N.E. 570.) The question of change in position and invocation of the doctrine of equitable estoppel must be decided based on the totality of the circumstances. (*Leisuretime Recreation Center VI, Inc. v. Byrne* (1981), 93 Ill. App. 3d 489, 417 N.E.2d 658.) Plaintiff here knew the landmark structures were present at the intersections but failed to obtain the necessary landmark commission approval pursuant to section 21—64.1 of the Municipal Code. As evidenced by its permit applications, plaintiff knew that one or both of the signs were projecting over a public way, over 12 feet above the curb level and for private use, and within 500 feet of a major route, yet it failed to comply with the relevant ordinances and statute. Plaintiff's officer acknowledged this awareness of possible noncompliance when he testified that

although plaintiff erected the structures, it chose, on the advice of counsel, to place no advertisements on the structures. Finally, the permits issued are permissive in nature and can be withdrawn at any time. (*City of Belleville v. Kesler* (1981), 101 Ill. App. 3d 710, 428 N.E.2d 617.) We cannot say that the trial court erred in refusing to apply the doctrine of equitable estoppel.

For the reasons stated, the judgment of the circuit court of Cook County finding that the permits were properly revoked and that plaintiff must remove the sign structures is affirmed. The judgment that plaintiff acquired a property interest in the permits and is entitled to an award of damages is reversed.

Judgment affirmed in part; reversed in part.

RIZZI, P.J., and McGILLICUDDY, J., concur.