**NATIONAL ADVERTISING COMPANY, a Delaware Corporation (subsidiary of Minnesota Mining and Manufacturing, a Delaware Corporation), Plaintiff,**

**v.**

**The CITY OF CHICAGO, an Illinois Municipal Corporation, Defendant.**

**No. 90 C 5573.**

United States District Court, N.D. Illinois, E.D.

Nov. 8, 1991.

---

Sanford M. Stein, Lance T. Jones, Sarah K. Nadelhoffer, Gordon & Glickson, P.C., Chicago, Ill., for plaintiff.

Emily Nicklin, Kelly Raymond Welsh, Susan Haerr Zucker, City of Chicago Corp. Counsel, Chicago, Ill., for defendant.

## MEMORANDUM OPINION
## AND ORDER

PARSONS, District Judge.

The City of Chicago enacted regulations which were designed to prevent billboards from abutting major highways. Chicago's zoning ordinance and electrical code, both amended in 1990, limited the number, size, and type of sign that would be permitted near the City's major highways. The ordinance and the electrical code require that entities wishing to place advertising signs near highways must petition the Chicago Zoning Administrator for a permit to do so.

Sections 8.9(5), 9.9(5) and 10.14(5) of the zoning ordinance provide in pertinent part that:

> No advertising sign shall be permitted within 500 feet of any major route.... The 500 feet shall be measured from the center line of the lane of traffic....

This is the so called "500 foot setback" requirement.

Sections 10.14–1, 10.14–2, 10.14–3 and 9.4–1 require special use permits for "roof signs" exceeding 50 feet in height. In addition, § 10.14(7) of the zoning ordinance prohibits signs from being placed within 75 feet of property in a residential district.

The plaintiff, National Advertising Co. ("National"), sought to erect 16 advertising signs on industrial or commercial proper-

ties in Chicago. National applied to the Zoning Administrator for permits under the zoning ordinance for the erection of signs on their properties.

Each application was denied by the Zoning Administrator for failure to comply with the "500 foot setback" requirement, the "roof sign" requirement, and the "75 foot setback" requirement of the zoning ordinance. National appealed the Zoning Administrator's decisions to the Chicago Zoning Board of Appeals. The Administrator's decision to deny the permits was affirmed on appeal.

National then filed suit against the City of Chicago. In Counts I–IV, National alleges that the pre-amendment ordinance and the pre-amendment electrical code were unconstitutional on their face and as applied. National also alleges that its due process, equal protection, and First Amendment rights were violated when it was denied permits for the signs which it sought to erect. In Counts V and VI, National argues that the amended zoning ordinance and the amended electrical code are also unconstitutional as they violate National's rights to due process and the rights guaranteed it by the First Amendment.

The City of Chicago moved the Court to dismiss National's complaint and on September 30, 1991, the Court entered an order granting the motion to dismiss. On that date, however, the Court reserved the issuance of the Opinion and Order for a later date in order to take the matter under further advisement. It is that motion to dismiss that is the subject of the instant Memorandum Opinion and Order.

The City moved the Court to dismiss Nationals' complaint on several grounds. First, it asserted that National's challenges to the old ordinance and old electrical code are moot as those provisions have been superseded and no longer have the force of law. Second, it asserted that National's challenges to the old laws failed to state a claim upon which relief could be granted. And third, it asserted that National's challenges to the current law also failed to state a claim upon which relief may be granted.

## MOOTNESS

■ The City asserts that National has no viable constitutional challenge under the old ordinance and old code because those provisions have been superseded by amended versions. The question then is whether National can pursue a constitutional challenge against a law that is no longer in effect.

The Tenth Circuit disposed of a similar challenge brought by National to Denver's repealed sign ordinance in *National Advertising Co. v. City and County of Denver*, 912 F.2d 405 (10th Cir.1990). In its amended complaint, National asserted that the ordinance was unconstitutional. Approximately one month after National filed its amended complaint, the ordinance was repealed. Because the ordinance was no longer in effect, the district court dismissed as moot National's claim for declaratory and injunctive relief as moot.

National argues that because it complied with all of the ordinances' requirements, it thus had vested rights, allowing it to pursue a claim for damages. However, National cannot assert a vested interest in a permit.

In the first place, the "facts" which National asserts support its position that it had gained vested rights to a permit do not in fact support its assertion. This is because National attempts to assert a legal interpretation as a factual allegation. National asserts that it "complied with all of [the old ordinance's] requirements," that "all [of its signs] are more than 500 feet from a major route *as measured along the line of sight.*" Response Memo., p. 2 (emphasis added), and that its signs "comply with the 500 foot setback *as measured along the line of sight.*" Response Memo., p. 4 (emphasis added). In other words, National asserts that its signs can be closer than 500 feet from the highway as long as that shorter distance is not perpendicular to the signs face. This is a legal argument posed by National as a factual allegation to evade dismissal. This National cannot do.

The ordinance requires a 500 foot setback prohibiting all off-premises advertising signs *within 500 feet of the centerline of the lane of traffic* closest to the sign, irrespective of the visibility of the sign's message to traffic. Ordinance § 9.9(5). National argued to the Zoning Board of Appeals, as it did here, for a "line of sight" interpretation of the setback requirements. National acknowledged to the Board that the sign faces are nearer than 500 feet to the highway. After hearing National's arguments, however, the Board found that National's signs were nearer than 500 feet to the highway and, therefore, not permitted. The Board noted that:

> [National's] argument that the Board should interpret the intent and purpose of the applicable code is misplaced, and that if they believe the term visible therefrom means legible therefrom, they should seek appropriate legislative action before the City Council ...

Complaint Exhibit C, p. 2. Thus, there are no facts which support National's position that it acquired vested rights in a permit.

In addition, under Illinois law, "permits are privileges from which no vested property rights attach." *Foster & Kleiser v. Chicago*, 146 Ill.App.3d 928, 100 Ill.Dec. 481, 497 N.E.2d 459 (1st Dist.1986). In *Foster*, the court held that the sign company did *not* acquire a property interest in the sign permits even though the plaintiff had expended approximately $44,000 to construct the signs after the permits had been issued but later revoked. In the present case, National did not acquire a vested property interest as it did not have a permit at all. Thus its "vested rights" argument must fail.

Under these circumstances, because the old ordinance and code are no longer in effect, the counts of the complaint in which National challenges the constitutionality of the old laws should be dismissed as moot.

## FAILURE TO STATE A CLAIM

### A. DUE PROCESS

■ National's complaint alleges that the statute as written is unconstitutional as it would deny National its due process rights. The City asserts that, as a preliminary matter, National's allegations under the current ordinance and code are not properly before this Court. National, the City points out, has not yet applied for a permit under the new laws. In response, however, National states that because the new laws are even more stringent than the old ones, it would be "economically irresponsible and futile" for it to apply for the permits it seeks.

However, until National makes an application for a permit under the new law, the Court is not in a position to determine how the City would treat National's application. National's failure to exhaust the code and ordinance's administrative requirements cannot be avoided simply because the licenses National seeks *may be* denied by the City authorities. See, *Williamson County Regional Planning Commission v. Hamilton Bank*, 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985); *Agins v. Tiburon*, 447 U.S. 255, 100 S.Ct. 2138, 65 L.Ed.2d 106 (1980). Thus, National's challenge would be premature—i.e. not ripe for review—unless the law were unconstitutional on its face.

### B. FIRST AMENDMENT

■ National also alleges that the ordinance and code are facially invalid as they violate its rights as guaranteed by the First Amendment. National asserts that the regulations continue to limit noncommercial advertising on other than "on-premise" signs which are restricted to promoting on-premise activities. This type of classification, National argues, displays a discrepancy in preferences for commercial over noncommercial speech. National asserts that this is a content based restriction of speech and is therefore unconstitutional.

In *Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981), the Supreme Court found that a municipality's regulatory scheme could legitimately distinguish between on-site and off-site advertising. *Id.* at 512, 101 S.Ct. at 2895. In *Wheeler v. Commissioner of*

*Highways,* 822 F.2d 586 (6th Cir.1987), the court stated:

> [F]urthermore, the on-premise/off-premise distinction does not constitute an impermissible regulation of content just because the determination of whether a sign is permitted at a given location is a function of the signs message.

*Id.* at 591. In addition, the distinction between on-site and off-site advertising is not aimed toward the suppression of an idea or viewpoint. *See Members of City Council v. Taxpayers for Vincent,* 466 U.S. 789, 104 S.Ct. 2118, 2128, 80 L.Ed.2d 772 (1984). Thus, the very type of on-site/off-site distinction which National finds objectionable has been found to be constitutionally permissible.

In addition, to be certain that non-commercial speech is treated no less favorably by the City of Chicago's laws than commercial speech, the City's new ordinance states that, "Any business sign authorized in this section is allowed to contain non-commercial copy in lieu of other copy." Ordinance §§ 8.9(6), 9.9(6), and 10.4(6). Virtually identical "in lieu of" provisions have been found to satisfy *Metromedia.* The court found in *National Advertising Co. v. Babylon,* 900 F.2d 551 (2d Cir.1990), that such "in lieu of" language would be a "simple solution to the First Amendment implications like the ones alleged here." *Id.* at 557.

On its face, the City's ordinance is content neutral and, therefore, is subject to the time place and manner restriction test. The zoning ordinance and electrical code pass that test—the substantial government interest of safety and aesthetics are directly advanced, while the regulations are narrowly tailored to achieve those goals. Because the test is satisfied, National fails to state a First Amendment claim.

### C. EQUAL PROTECTION

 To state a discriminatory enforcement claim under § 1983, National must allege "intentional or purposeful discrimination," *Snowden v. Hughes,* 321 U.S. 1, 8, 64 S.Ct. 397, 401, 88 L.Ed. 497 (1944); *Scudder v. Greendale,* 704 F.2d 999, 1002 (7th Cir.1983), "purposefully directed toward plaintiffs." *Tarkowski v. Robert Bartlett Realty Co.,* 644 F.2d 1204 (7th Cir.1980). As the Supreme Court stated in *Snowden:*

> [Intentional or purposeful discrimination] may appear on the face of the action taken with respect to a *particular class or person,* or it may be shown by extrinsic evidence showing a discriminatory design to favor one *individual or class over another* not to be inferred from the action itself.

321 U.S. at 8, 64 S.Ct. at 401 (emphasis added). In order to show discrimination, a party must show that a person is being treated unfairly with respect to some category or characteristic, in contrast to another person in a different category or with different characteristics. *Shango v. Jurich,* 681 F.2d 1091, 1104 (7th Cir.1982).

National also seems to be alleging its claim based on the doctrine of "selective enforcement." The law on this doctrine which disapproves the unequal administration of a facially neutral legislation is summarized in *Shango* as follows:

> '[N]ot every denial of a right conferred by state law involves a denial of the equal protection of the laws....' *Snowden v. Hughes,* 321 U.S. 1, 8, 64 S.Ct. 397, 401, 88 L.Ed. 497 (1944) [additional citations omitted]. Rather, the 'Equal Protection Clause has long been limited to instances of purposeful or invidious discrimination rather than erroneous or even arbitrary administration of state powers. The gravamen of equal protection lies not in the fact of deprivation of a right but in the invidious classification of persons aggrieved by the state's action.' [citation omitted] A plaintiff 'must demonstrate intentional or purposeful discrimination' to show an equal protection violation. [citation omitted] " 'Discriminatory purpose,' however, implies more than intent as volition or intent as awareness of consequences." *Personnel Administrator of Massachusetts v. Feeney,* 442 U.S. 256, 279, 99 S.Ct. 2282, 2296, 60 L.Ed.2d 870 (1979) [citations omitted] It implies that the decisionmak-

er singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effects on the identified group.

*Shango*, 681 F.2d at 1104.

National alleges that the City has purposefully engaged in a course of conduct with a discriminatory intent to favor Ad–Ex over National. National does not, however, define any category or characteristics which underlie its claim.

Absent any identifiable category or characteristic that would support a basis of discrimination, National cannot maintain its Equal Protection claim. Given these circumstances, National's challenge to the constitutionality of the City's ordinance and code should be dismissed for failure to state a claim upon which relief can be granted.

### ACCORDINGLY:

The City of Chicago's motion to dismiss Counts I–IV of National's complaint as moot is granted. The City of Chicago's motion to dismiss Counts V and VI for failure to state a claim upon which relief can be granted is also granted. This order is final and appealable as of this date.

IT IS SO ORDERED.