FOURTH DIVISION
 MARCH 6, 1997 
 












Nos. 1--95--2892
 1--95--2908


MEDICAL DISPOSAL SERVICES, INC., ) 
and INDUSTRIAL FUELS AND )
RESOURCES/ILLINOIS, INC., )
 )
 Petitioners-Appellants, ) 
 )
 v. ) Nos. PCB 95--75, 95--76
 )
ENVIRONMENTAL PROTECTION )
AGENCY and THE POLLUTION CONTROL )
BOARD, ) Petition for Review of 
 ) Orders of the Pollution
 Respondents-Appellees. ) Control Board


MODIFIED ON DENIAL OF REHEARING


 JUSTICE CERDA delivered the opinion of the court:

 Petitioners, Medical Disposal Services, Inc., an Illinois
corporation (MDS), and Industrial Fuels and Resources/Illinois,
Inc., an Illinois corporation (Industrial Fuels), appeal from the
denial of permits by respondents, the Pollution Control Board
(the Board) and the Environmental Protection Agency (the Agency),
for MDS to construct a medical-waste-treatment facility.
Petitioners argue on appeal that (1) the Board erred in granting
summary judgment in favor of the Agency because local siting
approvals of pollution-control facilities are transferable to
purchasers; (2) the Board should have applied equitable estoppel
or equitable tolling; and (3) the Board erred in denying
Industrial Fuels's petition for intervention. We affirm.
 The main issue in this case is whether a municipality's
siting approval of a pollution-control facility under section
39.2(a) of the Environmental Protection Act (415 ILCS 5/39.2(a)
(West Supp. 1995)) is transferable to a subsequent owner on the
basis that siting approval is location specific and not applicant
specific. In other words, can a person other than the original
siting applicant seek a developmental permit for a new pollution
control facility?
 I. Facts
 In 1989 Industrial Fuels petitioned the City of Harvey,
Illinois, for approval of the construction of a medical- waste-
treatment facility, pursuant to a statutory provision giving
localities the right to approve the siting of pollution-control
facilities. Harvey denied the siting application in 1990, and
Industrial Fuels appealed to the Board. The Board affirmed the
denial, but this court reversed (Industrial Fuels &
Resources/Illinois, Inc. v. Pollution Control Board, 227 Ill.
App. 3d 533, 592 N.E.2d 148 (1992)). 
 In 1994 MDS entered into an agreement giving it an option to
purchase the Harvey site from Industrial Fuels. MDS had earlier
inquired of the Environmental Protection Agency whether MDS could
rely on the siting approval that Industrial Fuels had obtained
from Harvey. An assistant counsel for the Agency responded in a
letter dated January 10, 1994, that, consistent with previous
interpretations in similar situations, the Agency's policy
remained that siting approval was location specific so that it
remained with land upon sale. The letter also stated that the
siting approval granted to Industrial Fuels was valid for MDS's
development of the facility.
 In May 1994 MDS submitted applications to the Agency for
permits to construct the facility. In September the Illinois
Attorney General's office wrote to MDS that Harvey had not
granted local siting approval to MDS. In October the Illinois
Attorney General's office wrote a letter to the general counsel
for the Agency that its view was that local siting approval was
"not only site-specific, but also facility-specific and
applicant-specific." On January 13, 1995, the Director of the
Agency wrote to the Attorney General that the two agencies had
differing interpretations of the siting approval law, but on
January 31 the Agency denied MDS's permit applications. 
 In March 1995, MDS appealed to the Pollution Control Board,
and it argued that permits could be issued pursuant to section
39(c) of the Environmental Protection Act (415 ILCS 5/39(c) (West
1994)) (the Act), on the basis that the Act required proof to the
Agency only that the municipality approved the location of the
facility and did not require that the municipality approve the
transfer of ownership. MDS filed a motion for summary judgment,
and the Agency filed a cross-motion for summary judgment. 
 On May 4, 1995, the Board denied MDS's motion for summary
judgment and granted the Agency's cross-motion for summary
judgment. The Board's order found that local siting approval
could not be transferred from Industrial Fuels to MDS because
siting approval was applicant specific. 
 On June 8, 1995, Industrial Fuels petitioned to intervene. 
The Board denied Industrial Fuels's petition because it was filed
after the Board's final decision was issued. The Board accepted
from Industrial Fuels, as an amicus curiae brief, a memorandum of
law in support of MDS's motion for reconsideration. The Board
denied MDS's motion for reconsideration. 
 II. Site Location Approval
 Petitioners first argue on appeal that local siting approval
of a pollution-control facility under section 39.2(a) of the Act
(415 ILCS 5/39.2(a) (West Supp. 1995)) is transferable to a new
owner because siting approval is only location specific. 
 Decisions of the Board are reviewed in accordance with the
administrative review law. 415 ILCS 5/41(a) (West 1994). The
review extends to all questions of law and fact presented by the
entire record. 735 ILCS 5/3-110 (West 1994). If the
determination of the Board does not involve any factual disputes,
and if the case involves solely a question of law, the court is
to accord some deference to the agency's interpretation of the
Act, but its interpretation is not binding on the court and the
court will not uphold erroneous interpretations. National
Environmental Services Corp. v. Pollution Control Board, 212 Ill.
App. 3d 109, 112, 570 N.E.2d 1245 (1991); City of Decatur v.
American Federation of State, County & Municipal Employees, Local
268, 122 Ill. 2d 353, 361, 522 N.E.2d 1219, 1222 (1988).
 Section 39(c) of the Act provides in relevant part:
 "[N]o permit for the development or
 construction of a new pollution control
 facility may be granted by the Agency
 unless the applicant submits proof to
 the Agency that the location of the
 facility has been approved by the County
 Board of the county if in an
 unincorporated area, or the governing
 body of the municipality when in an
 incorporated area, in which the facility
 is to be located in accordance with
 Section 39.2 of this Act." 415 ILCS
 5/39(c) (West 1994).
 Section 39.2(a) provides:
 "The county board of the county or
 the governing body of the municipality
 *** shall approve or disapprove the
 request for local siting approval for
 each pollution control facility which is
 subject to such review. An applicant
 for local siting approval shall submit
 sufficient details describing the
 proposed facility to demonstrate
 compliance, and local siting approval
 shall be granted only if the proposed
 facility meets the following criteria:
 (i) the facility is necessary to
 accommodate the waste needs of the 
 area it is intended to serve;
 (ii) the facility is so designed, 
 located and proposed to be operated that
 the public health, safety and welfare
 will be protected;
 (iii) the facility is located so as to
 minimize incompatibility with the
 character of the surrounding area and to
 minimize the effect on the value of the
 surrounding property; 
 (iv) the facility is located outside the
 boundary of the 100 year flood plain or
 the site is flood-proofed;
 (v) the plan of operations for the
 facility is designed to minimize the
 danger to the surrounding area from
 fire, spills, or other operational
 accidents;
 (vi) the traffic patterns to or from the
 facility are so designed as to minimize
 the impact on existing traffic flows;
 (vii) if the facility will be treating,
 storing or disposing of hazardous waste,
 an emergency response plan exists for
 the facility which includes
 notification, containment and evacuation
 procedures to be used in case of an
 accidental release;
 (viii) if the facility is to be located
 in a county where the county board has
 adopted a solid waste management plan
 consistent with the planning
 requirements of the Local Solid Waste
 Disposal Act or the Solid Waste Planning
 and Recycling Act, the facility is
 consistent with that plan; and
 (ix) if the facility will be located
 within a regulated recharge area, any
 applicable requirements specified by the
 Board for such areas have been met.
 The county board or the governing body of the
 municipality may also consider as evidence the
 previous operating experience and past record of
 convictions or admissions of violations of the
 applicant (and any subsidiary or parent
 corporation) in the field of solid waste
 management when considering criteria (ii) and (v)
 under this Section." 415 ILCS 5/39.2(a) (West
 Supp. 1995).
 The transferability issue was touched upon by the Board in
Christian County Landfill, Inc. v. Christian County Board, Ill.
Pollution Control Bd. Op. 89--92 (October 18, 1989). Petitioner
landfill company appealed from respondent county board's decision
that imposed as a condition, for the approval of the application
for the landfill expansion, that any buyer or subsequent owner of
the landfill company request the approval of the county board for
use of the site. 
 Christian County analyzed section 39.2(e) of the Act, which
provided that "[i]n granting approval for a site the county board
or governing body of the municipality may impose such conditions
as may be reasonable and necessary to accomplish the purposes of
this Section and as are not inconsistent with regulations
promulgated by the Board." 415 ILCS 5/39.2(e) (West Supp. 1995). 
The Board found that the statutory criteria did not refer
anywhere to future transfer of ownership and that the condition
concerning future ownership was not reasonable or necessary to
accomplish the purposes of section 39.2. Christian County, at
104-375.
 Christian County did not address the issue whether a
subsequent owner had to reapply for local siting approval. The
case's determination that a county board could not condition its
approval on a future request for approval by a new owner would
not be inconsistent with a statutory interpretation that local
siting approval has to be reobtained when the facility's
ownership changes.
 Petitioners also rely on another Board opinion, Concerned
Citizens Group v. County of Marion, Ill. Pollution Control Bd.
Op. 85--97 (November 21, 1985), in which petitioners sought to
challenge the local siting approval for a new pollution-control
facility. Petitioners in that case argued that the proceedings
were fundamentally unfair in part because the applicant company
was sold and because the approval of a new pollution-control
facility was not transferable. The Board rejected the argument
that the sale violated fundamental fairness. Concerned Citizens,
at 66-427.
 Although Concerned Citizens did reject an argument that the
sale of a proposed pollution-control facility vitiated the local
siting approval, the argument was made only in the context of the
Board's examination whether the procedures used by the locality
were fundamentally fair. The case did not address the issue
whether a permit could be granted under section 39(c) of the Act
to a different applicant without new local siting approval.
 Section 39(c) does not expressly provide that the applicant
for the permit must be the same entity that received local siting
approval, but reading section 39(c) and section 39.2(a) together,
we infer that section 39(c) contemplates that the applicant must
be the same entity that had obtained local siting approval. 
Although section 39(c) refers only to the approval of the
location of the facility as a condition required for permit
issuance, we find determinative of the transferability issue that
section 39.2(a) of the Act permits localities to consider the
applicant's previous operating experience. Pursuant to section
39.2(a), which is referenced in section 39(c), localities are to
approve not just the site's location and the facility but also
the operator of the facility. The last sentence of section
39.2(a) provides: 
 "The county board or the governing body
 of the municipality may also consider as
 evidence the previous operating experience
 and past record of convictions or admissions
 of violations of the applicant *** in the
 field of solid waste management ***." 415
 ILCS 5/39.2(a)(West Supp. 1995).
 The provisions of a statute must be construed in light of the
entire statute as a whole. Stone v. Department of Employment
Security Board of Review, 151 Ill. 2d 257, 261, 602 N.E.2d 808
(1992).
 The Christian County opinion listed the nine statutory
criteria that it considered in rendering a decision in the
matter. It listed the nine criteria in section 39.2(a) except it
omitted and did not consider the last sentence of 39.2(a). The
General Assembly recognized that it was important that a county
board or the governing body of a municipality have the
opportunity to investigate and examine the past operating history
and past record of convictions and violations of an applicant. 
The importance of site approval was previously recognized in the
case of Kane County Defenders, Inc. v. Pollution Control Board,
139 Ill. App. 3d 588, 593, 487 N.E.2d 743 (1985), which pointed
out:
 "This broad delegation of
 adjudicative power to the county
 board clearly reflects a
 legislative understanding that the
 county board hearing, which
 presents the only opportunity for
 public comment on the proposed
 site, is the most critical stage of
 the landfill site approval
 process." 
 We agree that the local site approval process is the most
critical stage of the process. In this case, the Pollution
Control Board did take into consideration the last sentence of
39.2(a) and found that to allow location site approval to be
transferred from an applicant to someone else would allow one to
bypass the scrutiny of the hearing process at the local level.
 Even if the Harvey facility is going to be substantially the
same as originally proposed, the ownership has changed. Section
39.2(a) recognizes the significance of the experience of the
owner. Requiring MDS to submit to another review by Harvey will
not be needlessly duplicative because it is essential to
implement the legislative intent of providing meaningful local
approval of the siting of pollution-control facilities. It may
be that a change in ownership will not in every case
significantly change the operation of a facility, but it is also
possible, if not more likely, that the management would change
when the ownership changes. 
 Industrial Fuels argues that the legislature did not intend
that localities have any involvement after an initial local
siting decision is made, but there is one provision in the Act
giving localities approval rights after initial approval has been
granted: when a facility has not accepted waste disposal for at
least five years. 415 ILCS 5/39(c) (West 1994) (local approval
is also required for some permits when an operating permit had
not been issued prior to a certain date). This provision could
permit localities to review a facility for a second time in a
situation where the ownership had not changed. With these
limited exceptions, localities generally do not have siting
approval power after an initial development or construction
permit is issued. No such permit had been issued in this case. 
 The fact that localities do not generally have approval
powers in the case of a transfer of ownership after the Agency
has issued construction permits does not vitiate this court's
statutory interpretation that a new applicant must reobtain local
siting approval before applying for a permit under section 39(c). 
The legislature may have considered that giving post-permit
approval rights to localities would adversely delay or prevent
the sale of pollution-control facilities. Another possible
reason for the legislature's generally different treatment of
pre- and post-permit time periods is to prevent an entity with an
imperfect history of operating pollution-control facilities from
evading the local approval process by arranging to purchase the
site after the seller received local siting approval. 
 Requiring renewed applications for local siting approval
does not prevent the transferability of an owner's property right
because siting approval is not a property right. See Foster &
Kleiser v. City of Chicago, 146 Ill. App. 3d 928, 934, 497 N.E.2d
459 (1986) (even permits are only privileges from which no vested
property rights attach). Permits in general can conceivably be
assigned, but the local siting approval given pursuant to the Act
is only a condition that is required before permits can be
issued. While a permit gives the holder specified rights, local
siting approval only gives the specific applicant the right to
apply for a permit.
 We hold that local siting approval is applicant specific and
is not transferable to a new permit applicant and that a new
applicant must reobtain such approval before permits under
section 39(c) can be granted. The Board therefore did not err in
granting summary judgment in favor of the Agency and against MDS.
 III. Equitable Estoppel and Equitable Tolling
 Petitioners next argue that the Agency should be equitably
estopped from denying the permits based on MDS's detrimental
reliance on the Agency's letter stating that the local siting
approval granted to Industrial Fuels remained valid for MDS.
 Two of the elements of equitable estoppel are
misrepresentation and knowledge that the representation was
untrue. City of Mendota v. Pollution Control Board, 161 Ill.
App. 3d 203, 209, 514 N.E.2d 218 (1987). There were no issues of
fact here concerning these two elements. The Agency's letter to
MDS gave the agency's opinion that local siting approval was
location specific and that the approval would remain valid for
MDS. As the letter gave the agency's interpretation of the
statute and its policy at the time, there were no
misrepresentations made. The agency changed its policy after the
letter was written. 
 More importantly, estoppel would not be appropriate here
against a governmental body because it would defeat the statutory
intent to give approval powers to localities in a matter
concerning public health and safety. See Tri-County Landfill Co.
v. Pollution Control Board, 41 Ill. App. 3d 249, 255-56, 353
N.E.2d 316 (1976) (no estoppel to preclude agency from charging
pollution violations because the people of Illinois would be
denied their constitutional right to a healthful environment). 
We hold that as a matter of law there is no basis to estop the
Agency from denying the permits. 
 Petitioners also argue that equitable tolling should be used
to toll the two-year expiration period for which local siting
approval is valid (415 ILCS 5/39.2(f) (West Supp. 1995)).
Petitioners state we should use the date of either the Agency's
letter to MDS or MDS's filing its permit applications so that MDS
could use the additional time to take alternate measures to
comply with section 39(c).
 Petitioners rely on Larrance v. Human Rights Comm'n, 166
Ill. App. 3d 224, 519 N.E.2d 1203 (1988), in which there was a
request for tolling of a period to file charges with an agency. 
L