**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2025 IL App (3d) 230264-U

Order filed April 4, 2025

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2025

| | | |
|---|---|---|
| THE CITY OF OAKBROOK TERRACE, an Illinois Municipal Corporation, | ) ) ) | Appeal from the Circuit Court of the 18th Judicial Circuit, Du Page County, Illinois. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | |
| THE ILLINOIS DEPARTMENT OF TRANSPORTATION, an Administrative Agency of the State of Illinois; OMER OSMAN, Secretary of Transportation of the Illinois Department of Transportation; JOSE RIOS, P.E., Region One Engineer of the Illinois Department of Transportation, and DARYLE A. DREW, Engineer, Illinois Department of Transportation, | ) ) ) ) ) ) ) ) ) ) | Appeal No. 3-23-0264 Circuit No. 22-MR-329 |
| Defendants | ) ) | |
| (The Illinois Department of Transportation and Omer Osman, | ) ) ) | The Honorable Craig R. Belford, |
| Defendants-Appellees). | ) | Judge, Presiding. |

_____

JUSTICE ANDERSON delivered the judgment of the court.
Justices Davenport and Bertani concurred in the judgment.

_____

**ORDER**

¶ 1      *Held*:    The trial court correctly affirmed that the Illinois Department of Transportation had authority to revoke the permit granted to the City of Oakbrook Terrace for a red light camera enforcement system on a state-owned highway.

¶ 2      The Illinois Department of Transportation issued a permit to the City of Oakbrook Terrace for installation of a "Red Light Running Camera Enforcement System" (RLRCES) on state-owned roadways located at two intersections within the City. Eventually, the Department revoked the City's permit and ordered the removal of all RLRCES equipment. The City filed a complaint for administrative review. The circuit court affirmed, finding that the Department had authority to revoke the permit. The City appeals, and we affirm.

¶ 3                               I. BACKGROUND

¶ 4      In October 2016, the Department issued a permit authorizing the City to proceed on plans for the construction, operation, and maintenance of an RLRCES for the southbound IL Route 83 lanes and the eastbound lanes of Cermak Road (22nd St). The permit was issued with several conditions, including that "[a]ny and all documents, writings and notes reflecting or identifying the standards, specifications, understandings and conditions applicable to the performance of the permitted work required by the Regional Engineer or his or her authorized representative are hereby incorporated into this permit by reference as though fully set forth herein." The Department's November 1, 2013, Safety Engineering Policy Memorandum, which governs the operation of RLRCES devices on state roads, was also incorporated into the permit. The Memorandum's guidelines were used by both the Department and the City for construction and safety considerations throughout the construction and installation phases. The Memorandum also states in pertinent part:

2

"An Evaluation Report shall be prepared by the Permit Applicant one year after the installation and shall be prepared every three years thereafter. The Evaluation Report shall include the following:

\*\*\*

• Crash data specific to RLR location(s) for the three (3) year period prior to and for the period post RLR Camera installation;

• An analysis of the crash data, including a summary of any increase in crash types;

• Signal timing and other settings before and after RLR Camera installation;

• Traffic volumes before and after RLR Camera System installation;

• Recommendations to further reduce red light violations and severe crashes to improve the operations of the intersection(s); and,

• Summary of adjudication experience and results.

The permit may be revoked during this annual review or at any time where the Department determines it is in the best interest of the motoring public of Illinois or if the RLR Camera System is having a detrimental effect on the operations of the existing traffic signal system."

¶ 5 The City made the system operational in July 2017. The City delayed submitting its initial one-year evaluation report until July 2020, nearly two years after its due date. In November 2017, May 2020, and June 2020, the Department sent reminder letters to the City about the responsibility to comply with the reporting requirements. The City did not prepare the subsequent three-year evaluation report, due in July 2021.

3

¶ 6    On May 3, 2022, the Department sent a notice of revocation to the City, terminating the City's RLRCES permit. In pertinent part, the notice stated:

"Dear Mayor Esposito:

The Illinois Department of Transportation (IDOT), by this notice, hereby revokes permit #1-T-16-0384 issued to the City of Oakbrook Terrace for its Red Light Running Camera Enforcement System (RLRCES).

The City of Oakbrook Terrace has failed to comply with IDOT's Safety Engineering Policy Memorandum on Automated Traffic Law Enforcement Systems, November 2013 (the '2013 Policy'). In accordance with the 2013 Policy, all communities using a RLRCES on State routes are required to produce one-year and three-year post-installation evaluation reports.

The construction of the RLRCES system at IL Route 83 and 22nd Street was inspected by IDOT on June 28, 2017. The City of Oakbrook Terrace was required to submit its initial evaluation report for the one-year period following installation in July 2018. IDOT sent reminder letters to the City of Oakbrook Terrace on May 14 and June 26, 2020. In July 2020, IDOT received an evaluation report, Reference Number 022-57459, covering the one-year period for August 2017 through June 2018. In addition to being untimely with its' initial one-year report, the City of Oakbrook Terrace has not submitted its' subsequent three-year post-installation evaluation report, which was due by July 2021.

The 2013 Policy provides that permits may be revoked during this annual review or at any time where the Department determines it is in the best interest of the motoring public of Illinois. Accordingly, IDOT, by this notice, revokes permit #1-T-16-0384 issued

4

to the City of Oakbrook Terrace. The RLRCES must be deactivated and all RLRCES equipment securely covered immediately following receipt of this notice."

The City filed a complaint against the Department for administrative review in the circuit court of Du Page County, advancing several arguments. The complaint also named Jose Rios and Daryle A. Drew, Department engineers, as co-defendants.

¶ 7 The City served the Department with interrogatories, requests to produce, and a request to admit facts during the early stages of the suit. The Department moved for a protective order to avoid responding to those requests. The trial court granted that motion. As required by statute, the Department then answered the complaint by filing its version of the entire record, along with a certificate of completeness. 735 ILCS 5/3-108(b) (West 2022). The City moved for default judgment or, alternatively, judgment on the pleadings because of claimed omissions in the submitted materials comprising the answer. The trial court denied those motions. The court dismissed Rios and Drew as parties on the basis that they acted as employees of the Department.

¶ 8 In May 2023, the circuit court issued its memorandum opinion and order affirming the Department's revocation of the permit. The circuit court ruled that the permit issued to the City is a privilege only. The court further concluded that permits are permissive and can be withdrawn at any time, with no requirement for notice or a hearing. Per the circuit court, the Department had discretion pursuant to the permit and the properly attached Memorandum to revoke the permit for failure to comply with the reporting requirements. The City filed a timely appeal.

¶ 9                                                    II. ANALYSIS

¶ 10 Review of an administrative decision is governed by the Administrative Procedure Act (735 ILCS 5/3-101, *et seq.* (West 2022)). When reviewing an administrative agency's decision, this court reviews the agency's decision, not the decision of the trial court. *Vincent v. The Illinois*

*Department of Human Services,* 392 Ill. App. 3d 88, 93 (2009). The standard of review that is applicable depends on whether the issue presents a question of fact, a question of law, or a mixed question of both fact and law. *Id*. The question here is whether the Department had the legal authority to revoke the permit, and, if so, whether it properly exercised its discretion to do so. That presents a mixed question of law and fact, which are subject to the clearly erroneous standard of review. *Id*. To overturn an agency's decision under the Administrative Procedure Act when mixed questions are presented, the reviewing court must be "left with the definite and firm conviction that a mistake has been made." *Id*.

¶ 11　　　　In administrative review cases involving the Department's denial or revocation of a permit, a full adversarial hearing is not necessarily required. In *Key Outdoor v. Dept. of Transportation*, 322 Ill. App. 3d 316 (2001), a property owner sought a permit, and its request was denied. After the property owner unsuccessfully pressed the Department for additional bases for its denial, it sued. The appellate court acknowledged that a final administrative decision "*usually* follows [from] some sort of adversarial process involving the parties affected, a hearing on the controverted facts, and an ultimate disposition rendered by an impartial fact finder." (Emphasis in original.) *Id*. at 324. The court determined, however, that so long as " 'the agency has taken some definitive action with regard to the application before it and * * * the applicant has been informed of the action,' " an adversarial hearing is not required. *Id*. (quoting *Illinois Wood Energy Partners, LP v. County of Cook*, 281 Ill. App. 3d 841, 851 (1995)).

¶ 12　　　　Here, the City applied for and was issued a permit for construction and operation of an RLRCES. A permit is a privilege and does not grant any vested property rights. *Foster & Kleiser v. City of Chicago*, 146 Ill. App. 3d 928, 934 (1986). Permits are permissive in nature and can be withdrawn at any time. *Id.* at 937. It is well settled law that an instrument may incorporate terms

6

from another instrument as long as the intent to incorporate those terms is expressed. *Wright v. Mr. Quick, Inc.*, 109 Ill. 2d 236, 240 (1985). Permits may, therefore, incorporate terms or conditions from separate documents that were part of the permit issuance transaction. See *Gregston v. City of Chicago*, 145 Ill. 451, 465 (1893).

¶ 13        The October 2016 permit expressed the intent that all documents "identifying the standards, specifications, understandings and conditions applicable to the permitted work" are "hereby incorporated into this permit by reference as though fully set forth herein." The Memorandum is such a document, and accordingly, its terms and conditions were incorporated into the permit. Those terms included the mandatory reporting requirements that the City failed to perform, providing the basis for the Department's permit revocation.

¶ 14        Nonetheless, the City argues that the Memorandum (and by extension, its reporting requirements) was invalid in its entirety because it was not adopted as a "rule" pursuant to the Illinois Administrative Procedure Act (5 ILCS 100, *et seq* (West 2022)). Under the Act, a rule is defined as an "agency statement of general applicability that implements, applies, interprets, or prescribes law or policy." 5 ILCS 100/1-70 (West 2022). The City argues that because the Memorandum was not formally adopted as a rule, it is unenforceable for purposes of mandating reporting by the City. On that basis, the City's contends that its permit could not be revoked for failure to comply with the reporting requirements. That argument, however, ignores the fact that the Memorandum was expressly made part of the permit.

¶ 15        Further, that the Memorandum does not fall within one of the Act's enumerated definitions of a "rule" does not make the agency's action inconsequential or unenforceable. Agencies may take actions without there being a rule in place. See *Northwestern Illinois Area Agency on Aging v. Basta,* 2022 IL App (2d) 210234, ¶ 56. In addition, rulemaking procedures are not applicable to

7

matters relating solely to public property. 5 ILCS 100/5-35(c) (West 2022) (stating "[t]he rulemaking procedures of this Article 5 do not apply to a matter relating solely to *** to public property, loans, or contracts"). The entire scope of the instant project was on public property, specifically state highways and their corresponding aprons being used for the underground installation of required equipment.

¶ 16    The City next argues that, because it controlled the RLRCES after installation, it need not follow the reporting requirements of the permit. If the system had been placed wholly within the municipal limits and on municipal roads, that argument *might* be more persuasive. The camera system here, however, controlled a state right-of-way. The Department is given general supervisory authority over State highways and rights-of-way. 605 ILCS 5/4-101.1 (West 2022). Further, the Department has the authority to permit construction on state rights-of-way. 605 ILCS 5/4-209 (West 2022). Indeed, the Department's permission is necessary for the construction of the system on state property and for any alterations in the underground electrical components, types of poles and wires, light timing sequences, and lane configurations. We conclude that the Department, not the City, continued to exercise authority and control over the RLCES after it was installed.

¶ 17    The City also claims that, despite the permit's incorporated Memorandum terms, it did not have to report to the Department because a red light camera statute requires only more limited reporting. Specifically, the City cites section 11-208.6(k-7) of the Illinois Vehicle Code (625 ILCS 5/11-208.6(k-7) (West 2022)) to argue that the statute governing automated red light camera systems requires a municipality's website to report only on preparations and published statistical evaluations. While that statute indeed imposes a requirement upon municipalities using red light camera systems to publicly report the specified information, we reject the City's position that the

8

statute also negates its obligation to follow the terms of the permit issued by the Department. The statute and permit constitute independent sources of obligation relative to the City's installation and use of the RLRCES platform.

¶ 18    We also reject the City's suggestion that the reporting requirements are pointless or arbitrary. Rather, the Department requires the reports for analyses intended to promote public safety. In its overview section, the Memorandum states: "If it is determined by the Department that the RLR camera system is not effective as a safety countermeasure, the RLR camera system shall be removed." Prior to removal, the Department has a duty to analyze the system's effectiveness, necessitating permit holders to provide data needed to conduct that safety analysis. The Memorandum terms make it clear that safety is the Department's primary concern when granting permits for camera systems, and the Department undoubtedly has the commensurate right to order removal of those systems when appropriate.

¶ 19    To advance the Department's goal of increasing safety, the reporting mandated by the permit's Memorandum terms seeks information controlled solely by the City. The Department has determined that the required reporting is necessary, and an administrative agency's interpretation of its own rules and regulations is entitled to substantial weight and deference due to its experience and expertise in operating within those rules. *Hartney Fuel Oil Company v. Hamer,* 2013 IL 115130, ¶ 16. Here, the City is in the best position to provide the data needed to reach critical conclusions about the effectiveness of camera systems in improving traffic safety. That information includes data on traffic volume, vehicle crashes, and a summary of increases in various types of crashes, both before and after installation of the systems. Perhaps most importantly, recommendations obtained from the City assist the Department in its collaborative efforts to further reduce the incidence of traffic crashes. The City's failure to provide all the mandated

9

reports directly violates the terms of the permit that were intended to increase public safety, and the impact of that violation is not mitigated by any additional public reporting required under section 11-208.6(k-7) (625 ILCS 5/11-208.6(k-7) (West 2022)).

¶ 20       Despite the Department's issuance of three reminder notices advising the City that the evaluation reports needed to be submitted, the City failed to timely comply with the requirements to prepare and produce those reports. Instead, the one-year report was filed some two years late. The subsequently required three-year report was never submitted during the entirety of the system's six-year operation. Non-compliance with the express terms of a permit may trigger the right to revoke the permit. *City of Chicago v. Westphalen,* 93 Ill. App. 3d 1110, 1116 (1981). Here, the Department elected to revoke the City's permit due to its failure to follow the permit's terms on mandatory reporting. The Department had both the authority and the discretion needed to revoke the permit under those conditions. To overturn its decision to revoke the City's permit, we must be "left with the definite and firm conviction that a mistake has been made." *Vincent,* 392 Ill. App. 3d at 93. The City's arguments have not left us with that firm conviction. Instead, we conclude that the Department's decision to revoke the City's permit was not clearly erroneous or without a valid basis in fact and law.

¶ 21       Finally, the City argues that the trial court erred in ruling on preliminary motions. First, City argues that the trial court erred in denying the City's request for discovery relating to the Department's revocation of the license. Discovery, however, is generally not conducted in an administrative review case. Second, the City argues that its claims against Jose Rios—a Department employee—should not have been dismissed. We conclude that the complaint is unclear about the extent of Rios's involvement in the revocation process beyond simply being employed by the Department and signing the revocation notice. The City has failed to sufficiently

10

identify a basis for including Rios as a party in the lawsuit. For that reason, the circuit court correctly dismissed the claims against him.

¶ 22                                  III. CONCLUSION

¶ 23        The judgment of the circuit court of Du Page County affirming the Department's revocation of the red light camera permit is affirmed.

¶ 24        Affirmed.